CHARLES ABDALLAH, Doing Business as ABDALLAH DAIRY, Appellant, *v.* NOAH C. CRANDALL, and VEEO YACAVONE et al., Doing Business as BILL BROTHERS DAIRY, Respondents.

Third Department, January 7, 1948.

*Lichtenberg & Williams,* attorneys (*Eugene D. Lichtenberg* and *Morris B. Swartz* of counsel), for appellant.

*Champlin & Sloan,* attorneys (*Robert W. Sloan* of counsel), for respondents.

FOSTER, J. This is an appeal from a judgment of nonsuit granted at the close of plaintiff's case in a trial before an official referee.

Plaintiff set up two causes of action in one complaint, seeking relief by way of an injunction, money damages and an account-

ing for profits. In the first cause of action plaintiff alleged that he purchased a dairy business from one Brown, and retail milk routes operated by Brown, in the city of Cortland and the village of Homer, New York; that the defendant Crandall, a former employee of Brown thereafter entered the employ of the defendants Yacavone, who were doing business as Bill Brothers Dairy, and appropriated and converted to himself confidential and secret information as to the names of the customers of Brown, solicited such customers, and diverted their business to the defendants Yacavone; that this was done with the knowledge and consent of the defendants Yacavone, to the injury of the plaintiff and in violation of the defendant Crandall's duty and obligation to his former employer who had sold to plaintiff. In the second cause of action plaintiff alleged a conspiracy between the defendants wherein it was agreed that the defendant Crandall would wrongfully appropriate and convert to their use confidential and secret information as to customers of plaintiff's vendor.

The defendants Yacavone's answer denied most of the material allegations of the complaint, admitting only that on January 2, 1947, the defendant Crandall entered their employ as a milk driver and salesman. The defendant Crandall denied that the list of plaintiff's route customers as obtained from plaintiff's vendor was a secret, and denied most of the other material allegations of the complaint except he admitted entering the employ of the defendants Yacavone on the 2d of January, 1947, as a driver and salesman, and that in such capacity he solicited orders for milk and cream from some of the customers who were formerly customers of Brown.

Plaintiff took over Brown's business on January 1, 1947. The defendant Crandall had been a route driver for Brown and plaintiff hired him to continue in that capacity. Crandall worked for one day and then left of his own accord and immediately went to work for the defendants Yacavone, who also operated a milk business in the Cortland and Homer area. There is evidence to the effect that, soon after entering the employ of the defendants Yacavone, Crandall began to solicit customers to whom he formerly delivered milk as an employee of Brown. He admits as much in his answer, and, under the rule that the most favorable inferences must be drawn for the plaintiff where a nonsuit is involved, we are obliged to assume that the defendants Yacavone had knowledge of his solicitation. It might also be found from the evidence that Crandall was able to solicit approximately one hundred and fifty customers from among those who had formerly been customers of Brown.

When Brown operated the business he had four retail routes, two of which were in Cortland and two in the village of Homer. He had two drivers, the defendant Crandall, and a man whose name was Ferris. Each driver had a route in Cortland and Homer, and delivered over these routes every other day. Brown kept route books in which were listed the names, addresses and the quantity of milk sold to each customer. These books were in the possession of the drivers when making deliveries of milk, and, upon their return to the plant after deliveries were completed, they were left at the office to be written up to show any delivery changes for use on the following days.

There was no proof that in making solicitations to former customers of Brown that Crandall made false or unfair statements about either Brown or the plaintiff, or their milk business, although there is evidence that Crandall told customers he was going into business for himself. There is no proof that the defendant Crandall agreed with Brown that when he ceased to be in the latter's employ he would not engage in a similar employment for someone else, nor is there any proof that Crandall made any contract with the plaintiff which would prevent him from working for a competitor. Neither is there any proof that Crandall copied or pilfered any written list of customers formerly served by Brown.

Upon the record as outlined the referee nonsuited the plaintiff, and held that the names of customers delivered by Brown to the plaintiff did not constitute a trade secret; that the defendant Crandall had no exclusive information concerning such names and was not prohibited by any contract of employment from working for another milk dealer and attempting to solicit customers, and that there was no clear evidence of fraud or conspiracy on the part of either of the defendants.

We think the rulings and the decision of the referee were correct. In some instances a list of customers may be a trade secret but it would be straining the meaning of the word beyond any reasonable limit to hold that the list transferred in this case came within that category. The plaintiff himself conceded on the trial of the action that every householder in both of the communities involved either bought milk or was a potential customer for it. It was also conceded, and it is a matter of common knowledge, that the delivery of milk from the very nature of the business is open and notorious. A trade secret, like any other secret, is nothing more than private matter; something known to only one or a few and kept from the general public, and not susceptible to general knowledge (*Kaumagraph Co. v.*

*Stampagraph Co.*, 235 N. Y. 1). A list of milk customers in a small city like Cortland, and a village like Homer, hardly meets such a definition. We are, therefore, constrained to hold with the referee that the list of Brown's milk customers was not a trade secret according to the accepted meaning of that term.

Plaintiff relies very largely upon the case of *People's Coat, Apron & Towel Supply Co.* v. *Light* (171 App. Div. 671, 673). There the defendant was employed as a driver of wagons delivering laundry, coats and aprons to individuals and collecting payment for the use thereof. In that capacity he acquired knowledge of and access to the plaintiff's customers. The customers were largely individual employees, unadvertised and reached only by personal contact. The court reversed a judgment of nonsuit and said, among other things: "There is no evidence that Light had a written list of them. There was in his head what was equivalent. They were on routes, in streets and at numbers revealed to him through his service with plaintiff. Their faces were familiar to him, and their identity known because of such employment."

The holding in this case was thought for some time to be at variance with and to have overruled the cases of *Peerless Pattern Co.* v. *Pictorial Review Co.* (147 App. Div. 715) and *Boosing* v. *Dorman* (148 App. Div. 824, affd. 210 N. Y. 529), which held that a former employee might use in a new employment the knowledge he acquired in the old if it involves no breach of contract or of confidence. However in a later case, *Scott & Co. Inc.*, v. *Scott* (186 App. Div. 518, 524), the *Light* case was distinguished, and the principles stated in the previous cases were reiterated in the following language: " It is well settled that in the ordinary agreement of employment there is no implied contract by the employee not to solicit the trade of customers of his employer after the termination of his employment. Nor does such solicitation constitute unfair competition, in the absence of an express agreement to the contrary. The employee may make use in his new employment of the knowledge he had acquired in the old."

In distinguishing the *Light* case the opinion further went to some length as to the facts showing that the defendant in that case used lists of customers that were really secret and not susceptible to knowledge by the public; also that the defendant conspired with another person to enter into a scheme whereby the defendant in calling upon customers was to deceive them into the belief that he represented and was still employed by the plaintiff. Of course such facts make an entirely different situa-

tion and a decision thereon is not an authority for the case before us. We think in the instant case that under the most favorable view of the evidence the plaintiff did not make out a cause or causes of action. The most that can be said is that the defendant Crandall, probably, with the knowledge and consent of the defendants Yacavone, used the knowledge he had acquired in working for Brown in order to solicit customers away from the plaintiff. Plaintiff undoubtedly was damaged, but it was *damnum absque injuria* incurred in the hard but permissive arena of competition.

The judgment of nonsuit should be affirmed, with costs.

HILL, P. J., HEFFERNAN, RUSSELL and DEYO, JJ., concur.

Judgment of nonsuit affirmed, with costs.