T. P. LABORATORIES, INC., Plaintiff,

v.

Gerald W. HUGE, Defendant.

No. 61-C-275.

United States District Court
E. D. Wisconsin.

Dec. 3, 1965.

Quarles, Herriott & Clemons, Marzall, Johnston, Cook & Root, Chicago, Ill., for plaintiff.

Wheeler, Wheeler & Wheeler, Milwaukee, Wis., for defendant.

## OPINION

TEHAN, Chief Judge.

This is a suit in two counts, (1) for infringement of two Letters Patent, and (2) for unfair competition. The defendant has denied infringement and asserted invalidity of the patents in suit and has denied the charge of unfair competition.

The patents in issue relate to that branch of dentistry known as orthodontia which is concerned with the straightening of irregular teeth. Patent No. 2,467,432 entitled "Method of Making Orthodontic Appliances and of Positioning Teeth" (hereinafter called Method Patent) was issued April 19, 1949 to Dr. Harold D. Keasling on an application filed September 16, 1946 as a division of a prior application, the original of which was filed July 23, 1943. Patent No. 2,531,222, entitled "Tooth Positioning Appliance" (hereinafter called Positioner Patent) was issued to the same Harold D. Keasling on November 21, 1950, on an application filed November 25, 1946.

The Method Patent contains six claims and defendant is accused of infringing Claims 1, 4, 5 and 6. The Positioner Patent contains eight claims all of which defendant is charged to infringe.

The subject matter of the patents in suit is an orthodontic appliance comprising a body of resilient and deformable material, which as described in the introduction to the Positioner Patent " * * * is adapted to surround the teeth of a

wearer for directing the teeth and the arch forms towards the assumption of preselected ideal positions * * *." and to the method of making said appliance.

The Positioner, as made by the plaintiff in accordance with the teaching of the patents is a rubber appliance which fits within the mouth of a patient. It contains impressions of the upper and lower teeth of the patient. All of these impressions do not correspond with the natural position of the teeth in the patient's mouth for some are located in different positions which are selected by the orthodontist as the ultimate position the teeth are intended to assume.

The Positioner is intended for use and is so used by the profession—primarily after basic treatment with the conventional type wires and bands. Thus, after major tooth movements have been accomplished, the positioner provides for the final artistic positioning and retention of the teeth. The positioner is not inserted in the mouth of a patient as a permanent appliance, as is the case during basic treatment, but is worn only part-time during the day and at night during sleep. The rubber allows it to stretch over the teeth and while it is being worn, its resiliency influences each tooth toward the pre-selected position.

Claim 1 of the Positioner Patent is the broadest of the claims and reads as follows:

"1. A tooth positioning appliance comprising a body of resilient and deformable material, said body being of a form to fit within the mouth of a patient and including impressions of the upper and lower teeth of a patient located in preselected positions adapted to engage the respective upper and lower teeth of the patient and to urge out-of-position teeth into the preselected positions."

The other seven claims of the Positioner Patent define the positioner in greater detail but all call for the "impressions" or "cavities" or "sockets" in the "resilient and deformable material" to be located in "preselected positions", (Claims 1

and 2); "the preselected position" (Claim 3); "ultimate desired positions" (Claim 4); "position to which said predetermined teeth are to be moved" (Claim 5); sockets "displaced from the actual positions of the corresponding teeth to the desired positions of the corresponding teeth" (Claims 6 and 7); and "predetermined second positions" (Claim 8).

Claim 1 of the Method Patent, which is the broadest of the claims in issue reads as follows:

"1. The method of making a tooth positioning appliance which comprises taking an impression of the upper and lower teeth, forming a cast model of said teeth, dissecting the teeth from said cast model, and resetting the teeth in the desired position, and making a resilient solid member having recesses shaped and located to the desired position of said teeth."

The other claims of the Method Patent define in greater detail the operations performed in each step of the process.

The procedure followed by the plaintiff in making its tooth positioner is as follows: First, a cast model of a patient's teeth is made "in the usual manner". The teeth are then rearranged by cutting and dissecting from the cast base of the model those teeth to be moved or repositioned and replacing the teeth on the cast in a position corresponding to the position to which the patient's teeth are to be moved. This rearranged model is called a "set-up". A plaster cast or duplicate model is then made of the set-ups of the upper and lower teeth. These duplicate casts are then arranged in a dental flask or articulator in such relationship that there is a freeway space between the upper and lower casts. The making of the tooth positioner is accomplished by mounting the duplicates in the upper and lower bases of a flask and inserting in the centerpiece of the flask an amount of uncured rubber in the general shape of a horseshoe. The three pieces of the flask are then assembled so that the upper and lower duplicates of the models are in contact with the upper and lower surfaces of the rubber.

This assembly is placed between the upper and lower platens of a dry heat press where the platens are gradually forced together as the rubber is cured. The cured rubber, thus produced has impressions therein of the upper and lower teeth corresponding to the teeth as they appear on the "set-ups". The molded and cured rubber is then trimmed down to a size adapted to fit into the mouth of the patient.

T. P. Laboratories, Inc., of which Dr. Kesling is Secretary and Treasurer, is the owner of the patent by assignment, and is in the business of manufacturing and selling the tooth positioner. It is the present practice for an orthodontist who wants to use the positioner, to take impressions of a patient's teeth after completion of the basic treatment. The orthodontist sends the model to the plaintiff with instructions as to which teeth of the model are to be repositioned, to what extent and in what manner. The set-up is made by T. P. Laboratories although occasionally the orthodontist makes his own set-up and sends it to the T. P. Laboratories. In either event, the T. P. Laboratories completes the processing of the positioner in accordance with the method heretofore set out.

VALIDITY. Defendant claims that the patents in suit are invalid (1) as anticipated by the prior art under 35 U.S.C.A. § 102, (2) as being in public use more than a year prior to the filing of the application; 35 U.S.C.A. § 102(b), (3) as not meeting the standard of invention prescribed by 35 U.S.C.A. § 103, and (4) failure of the patentee to distinctly point out and claim his invention as required by 35 U.S.C.A. § 112.

Defendant has cited and introduced into evidence numerous prior art patents and articles published in professional journals. The court has carefully examined all of them but will discuss only those upon which defendant introduced the testimony of his expert and those which the court deems most pertinent.

The Remensnyder patent, No. 1,691,785 issued November 13, 1928, is cited by the Patent Office in the prosecution of both the patents in suit. It discloses an elastic, rubber mouthpiece which contains therein impressions of a patient's teeth. It fits snugly over the patient's teeth and extends up to and contacts the gums so intermittent pressure applied by the teeth serves to massage the gums. It is structurally indistinguishable from the Positioner Patent in suit and differs from it only in the fact that the position of the impressions of the patient's teeth in the appliance corresponds with the actual position in the patient's mouth and are not in a different or pre-selected position.

The Maker patent, No. 1,818,146, issued August 11, 1931 is not a Patent Office reference. It discloses a gum massaging device similar to Remensnyder and, as in Remensnyder, the tooth impressions are not in a "preselected" or "ideal" position but correspond with the actual position of the teeth in the patient's mouth.

Since neither Remensnyder or Maker respond to the limitation of the patents in suit that the impressions of the teeth occupy positions different from those in the patient's mouth they do not anticipate the patents in suit.

The Sugatt patent, No. 646,629, issued April 3, 1900, is a Patent Office reference of record in the Method Patent but not in the Positioner Patent. It discloses a device for regulating teeth which comprises a plate, or tray, made of elastic vulcanized rubber consisting of an outer and inner rim fitting the teeth of the wearer and joined together at the ends by crosspieces which fit over the crowns of the teeth. The plate has tooth receiving grooves or cavities formed to the exact shape of those teeth of the patient which are already in proper alignment. Those grooves or cavities which are designed to receive the teeth which the orthodontist desires to straighten have been altered so that the plate will press against them and urges them into a different and more desired position. The device is constructed by first making an exact duplicate of the patient's teeth and then alter-

ing the cast by scraping away a portion of the teeth to be acted upon. A wax impression is then taken of the altered cast and a plate of vulcanized rubber is made therefrom in a manner well known to those skilled in the art.

The Sugatt disclosure does not have impressions of both the lower and upper teeth of a patient located in preselected positions nor does the method of making it call for replacing the teeth on the cast to a preselected position. Hence, it is not an anticipation of the patents in suit.

The "Gunning Splint", Exhibit 144, an article in "A Manual of Dental Prosthetics" published in 1920 discloses a method of making a rubber splint for use in cases of fractures of the jaw. Impressions of all of the teeth of the patient, both upper and lower are taken and a cast model is made therefrom. This model is then cut at the point of fracture and the parts of the model comprising groups of teeth are reset thereon and adjusted to make a proper occlusion. A hard rubber splint is processed from the model which the patient wears to hold the jaw in place while the fracture is mending. The splint is not intended to and in fact does not urge the teeth to a position which they never occupied before. The splint cannot be held to anticipate the claims of the patents in suit.

None of the other devices and methods of the prior art meet all of the limitations of the claims of the patents in suit but are pertinent in consideration of the defense of obviousness under 35 U.S.C.A. § 103 asserted by defendant.

35 U.S.C.A. § 103. OBVIOUSNESS. Defendant asserts that the claims of the patent in suit are invalid since the subject matter as a whole would have been obvious to one skilled in the art at the time the invention was made, in this case, an orthodontist. Dr. Rogge, the defendant's expert, an orthodontist who uses the tooth positioner in his practice, testified that an orthodontist skilled in his art normally reads orthodontic journals, literature and textbooks to learn of new disclosures, suggestions and methods and then will vary the methods in view of his own experience and uses that portion of it that he feels is good and will work well. Moreover, a skilled orthodontist is knowledgeable in the fields of dental surgery, oral hygiene and oral surgery.

It is, thus, the task of the court to analyze the state of the art of orthodontia at the time the invention was made, define the differences between the claims of the patents in suit and the teachings of the prior art and make the determination of obviousness or non-obviousness.

In the performance of an inventive act, two ideas are present in the mind of an inventor (1) the idea of an end to be accomplished, and (2) the idea of a means by which it can be attained. In the instant case, the end to be accomplished as conceived by the patentee is to reposition teeth to ideal or normal positions by a single appliance, easily removable which does not require the use of conventional bands and wires attached to "anchor" teeth. The means that the inventor employed is a body of resilient and deformable material provided with tooth cavities in positions to which the teeth of the patient are to be moved from their abnormal positions.

The defendant has shown that at the time the inventions were made, the orthodontic art included a great variety of appliances which applied elastic and resilient forces to the teeth to urge them to new positions. Not all of them employed bands and wires, and some of them were constructed from a cast of the patient's teeth in a corrected position. As early as 1867 a Dr. Burgh in an article in "Transactions of the Brooklyn Dental Association", Exhibit 147, explained a method for regulating teeth which comprised making a cast of a patient's teeth obtained from a wax impression and so altering it that a rubber plate made to the cast would produce a twisting pressure on the natural teeth. In this disclosure, the plate runs over the cutting edges of the teeth to be acted upon.

The Sugatt disclosure, heretofore described, teaches the use of a single re-

movable rubber appliance not dependent on wires, ligatures or bands.

There is also present in the prior art the teaching of the use of an appliance which exerts pressure on all or almost all of the teeth of a patient at the same time which is constructed from a model of a patient's teeth upon which the teeth have been rearranged to the desired position. The appliance made of gold wire is described in an article published in the International Journal of Orthodontia, Oral Surgery and Radiography, in 1932, Exhibit 143. A model of a patient's teeth is made; the teeth are then cut up and rearranged upon the model normally, or in other words, in the desired position. A new model is then made from the corrected model and a spring of gold wire is fabricated on said duplicate model which, when inserted in the patient's mouth urges the patient's teeth to the position corresponding to those on the corrected model.

The prior art also teaches procedures for making models of teeth for diagnostic purposes which are identical to making the "set-up" of the patents in suit. An article in The Dental Cosmos, Exhibit 140, published in 1926, describes a method which includes the taking of impressions of both jaws, making a model of the patient's teeth, sectioning the teeth and resetting each tooth to its proper occlusion.

■ The device of the prior art most closely resembling the tooth positioner claimed in the patents in suit is the gum massager disclosed by the Remensnyder and Maker patents. Indeed, in appearance, it cannot be distinguished from the tooth positioner. Dr. Cook, the plaintiff's expert, agreed that if the teeth of a patient using a gum massager drifted out of their normal position, the massager would function to retard the drift and urge the teeth back to their original position. In other words, the device can function to move the teeth. To an orthodontist familiar with the principles of the application of resilient forces to the teeth and even to a layman, this is an obvious and predictable result. If, per-

chance, a device made according to Remensnyder and Maker were worn by a person other than the one for whom it was made, it would also have the effect of moving the teeth. Thus, the question to be resolved is whether it would be obvious to a skilled orthodontist familiar with the appliances and methods of the art of orthodontia and dentistry to take advantage of these predictable functions of the gum massager, and, if he so desired, construct an appliance over an altered cast of the patient's teeth on which the teeth are properly positioned. The court believes that this modification of the gum massager would be obvious to an orthodontist familiar with the art heretofore described. The court therefore holds that the claims of both patents in suit are invalid under 35 U.S.C.A. § 103.

In reaching this conclusion, the court has considered the presumption of validity accorded the patents in suit by 35 U.S.C.A. § 282, as well as the fact that certain of the pertinent prior art patents were cited in the prosecution of the patents. However, the court is convinced that defendant has met its burden of proof and successfully overcome the presumption. The file wrapper history of both patents as well as the original abandoned patent is significant. The Positioner Patent, issued after the Examiner's rejection was reversed by the Board of Patent Appeals and the sole reference on appeal was Remensnyder. Sugatt, which was not a reference of record was not considered by the Board. Although both the Sugatt and Remensnyder patents are of record in the prosecution of the Method Patent, it does not appear from a consideration of the file wrapper history that the essential teaching present in the prior art of dissecting and replacing teeth on a model as disclosed in Exhibit 140 was before the Patent Office. Without said teaching the significance of the references of record was not appreciated by the Examiner who allowed the claims in issue.

Plaintiff's claim of commercial success as indicative of inventiveness is not per-

suasive in this case. The evidence shows that the sales of the tooth positioner increased from an average of 122 per month in 1954 to 734 per month in 1960 and that presently approximately 1500 different orthodontists in all parts of the United States and Canada are served by T. P. Laboratories. This is, of course, an excellent record of sales growth. However, the evidence also shows that the plaintiff expended much effort through published articles, conducting courses and holding over 25 seminars, teaching the proper use of the positioner in order to gain acceptance by the practicing orthodontist. The positioner did not and has not replaced the more conventional methods for basic orthodontic treatment nor is there evidence that it is the only type of removable appliance used for the final steps in positioning teeth. There is no evidence in the record as to the total number of orthodontists practicing in the United States, and neither is there any testimony relating to the number of patients seeking orthodontal treatment during the years in question. In the absence of such evidence and in view of the extensive efforts of Dr. Harold Kesling in promoting the use of the positioner, commercial success is of little probative value in determining invention.

### PRIOR PUBLIC USE—THE "HAGMAN" TESTIMONY.

On trial, defendant introduced into evidence and read into the record the testimony of one Harry Hagman which he asserts proves that the alleged invention tions were known and in public use at least before 1940. Mr. Hagman is in the dental laboratory business doing business as the Hagman Dental Laboratory. From 1910 to 1946 he was superintendent of the Boos Dental Laboratory in Minneapolis, Minnesota. He testified that during the time he was associated with the Boos Dental Laboratory, the laboratory made many rubber appliances to fit over the teeth of patients. The appliances were made from models of patients' teeth which were sent in by dentists. One, Dr. Maker of Duluth (patentee of the Maker patent, supra) sent in models from which Hagman processed a gum massager appliance. Sometime before 1940, Dr. Maker began to send in models of patients' teeth on which one or two teeth had been moved. The way Hagman could detect that the position of some of the teeth had been altered on the original model is that on a set of natural teeth the interdental spaces and the tissues around the teeth can be seen. If any teeth had been altered, however, and waxed into a place, the impression of the wax is different from the impression that would result from an impression taken from a patient's mouth. As Mr. Hagman testified "you could tell from the wax outline around the gingival that one or two teeth had been moved." A Dr. Spear of Duluth also sent in models of teeth on which one or two teeth appeared to have been reset in a different position. Since, however, Hagman was only a processor of appliances, he had no way of knowing why Dr. Spear and Dr. Maker had moved the teeth or the purpose of the treatment of the patient for which the appliance was designed. Hagman was familiar with the Maker patent for a gum massager and did know that those rubber appliances fabricated from unaltered models of teeth were constructed in accordance with the teaching of the patent and intended to be used for gum massage. However, with regard to the altered cast, Hagman's testimony that Dr. Maker possibly intended to use the appliance to move teeth was purely speculation and not based on first-hand knowledge. Hagman testified on cross-examination that the model could have been damaged and repaired. The court is inclined to believe that Mr. Hagman's theory as to the reason the teeth on the model were moved is more likely to be the fact than that the models had been broken. But his testimony concerning observations of the models he received does not establish that the teeth on the model had been moved to positions not previously occupied by the patient's teeth. The burden of proof of prior public use is a heavy

one. The evidence adduced by the defendant must be clear and convincing and a finding cannot be based on speculation and probabilities. In the case at bar, we hold that the defendant has not met his burden of proof of prior public use of the invention.

### INFRINGEMENT.

 Since an invalid patent, of course, cannot be infringed, the court need not reach the issue of infringement. However, in line with the court's policy of resolving all issues between the parties, it has considered the evidence adduced by plaintiff and is of the opinion that the claims of both patents, if valid, are infringed by the defendant.

The evidence shows that the defendant has an orthodontic laboratory business where he makes tooth positioners upon orders placed by orthodontists.

In the course of pre-trial preparation, defendant demonstrated the procedure he follows in making tooth positioners in the presence of his counsel, one of the plaintiff's counsel, and plaintiff's patent expert, Cook. Cook's testimony concerning the steps employed stands unrefuted.

In practicing the method, defendant performs the same steps as plaintiff does and his procedure responds to all the claims of the method patent here in issue. It is true that the preliminary steps of taking the impressions of the patient's teeth and forming a cast model of said teeth is done by the customer—the orthodontist. However, the orthodontist's business is solicited by defendant, the order is made on prescription sheets provided by the defendant and he is not relieved from responsibility for infringement merely because another participates in the infringement.

As to the Positioner Patent, defendant contends that plaintiff has failed to satisfy its burden of proof because no positioner made by defendant was introduced in evidence, nor was there any testimony relating the elements of the claims of the patent to any particular positioner worn by a specific patient. We find no merit to this argument. The plaintiff's expert witness, Cook, testified that he had seen one of the tooth positioners made by defendant and that the elements of the claims of the Positioner Patent find response in the defendant's positioner. The defendant's own testimony established that he constructed the appliances to the doctor's prescription and that they "certainly are designed to straighten teeth or to move teeth." Plaintiff has proved to the satisfaction of the court that defendant has practiced the teaching of the claims of both patents in suit.

### CONSTRUCTION OF THE CLAIMS.
### (35 U.S.C.A. § 112)

Defendant also argues that the claims of both patents in suit are invalid for failure of the patentee to distinctly point out and claim his invention. This argument turns on language in the claims of the terms "ideal position, preselected position, and predetermined position."

These words, when viewed in the context of the specifications and in light of the file wrapper history, adequately describes the alleged invention as a positioner in which the tooth impressions or cavities are located in positions to which the teeth are to be moved and which positions they had never before occupied.

The court therefore finds that the claims sufficiently define plaintiff's asserted invention.

### SECOND CAUSE OF ACTION.
### UNFAIR COMPETITION.

 Plaintiff has charged defendant with unfair competition by disclosing to others and using himself certain confidential information, technique and "know-how" constituting trade secrets which were intrusted to him in confidence while he was plaintiff's employe. There are nine purported "trade secrets" in issue. This court has jurisdiction by reason of Title 28, § 1338(b) of U.S.C.A. since the claim of unfair competition is directly joined with infringement of the Tooth Positioner and Method Patent. It also has jurisdiction under Title 28 U.S.C.A. § 1332(a) (1) (diversity of citizenship).

The plaintiff's predecessor, the La-Porte Tooth Positioning Laboratories was formed by Dr. Harold Kesling for the purpose of producing the tooth positioners which are the subject matter of this suit. About 1955 the present corporate plaintiff was formed as a successor to LaPorte Tooth Positioning Laboratories. From the beginning plaintiff and its predecessor maintained a policy of secrecy in relation to the production of its tooth positioners. Orthodontists and other visitors did not have access to the area where the positioners were made except by pre-arrangement and when visiting groups of orthodontists toured the laboratory all apparatus used in making the positioner were put away. In the latter part of 1953, the defendant, who had received a B. S. Degree in marketing from Indiana University in 1951, and had no prior experience in the orthodontic or dental field, became employed by plaintiff's predecessor. He was taught the technique of making set-ups and tooth positioners developed by Dr. Kesling, and became very proficient. No written contract not to disclose confidential information was ever signed by the defendant, but he was aware of the policy of secrecy maintained by Dr. Kesling.

In the Fall of 1959, defendant left plaintiff's employ to become President of the Dental Specialty Company (later the Dental Corporation of America) in Silver Spring, Maryland.

In this capacity, defendant utilized the skills and techniques he had acquired while employed by the plaintiff and aided the corporation in putting a tooth positioner on the market which was substantially identical to that of the plaintiff's and which was fabricated in much the same fashion.

Shortly before the filing of a patent infringement suit by plaintiff on September 28, 1960 against Dental Corporation of America and Huge in the Maryland District Court,[1] the defendant moved to Racine, Wisconsin where he subsequently established his own business and is admittedly manufacturing and selling tooth positioners in competition with the plaintiff. While President of Dental Corporation of America, and to the present time, the defendant has solicited as customers orthodontists with whom he became acquainted while in the employ of plaintiff and many of whom were customers of the plaintiff. Many of them are now purchasing tooth positioners from him.

The record establishes that the training defendant received from Dr. Kesling in making the set-ups and tooth positioner was a substantial factor in his obtaining the position of President of Dental Corporation of America. Although there is a conflict in the testimony as to whether defendant advised Dr. Kesling or any other agent of plaintiff that he did not intend to make tooth positioners after leaving the plaintiff, it is apparent that the defendant did not disclose his intention to enter into competition upon termination of his employment with the plaintiff.

Before discussing the nature of the alleged trade secrets it is appropriate to review some basic legal principles of the law of Agency and Unfair Competition in order to understand the gravamen of the cause of action asserted by the plaintiff herein. In the first place, in the absence of a valid patent, the act of copying exactly competitor's product and placing it on the market is not a legal wrong and cannot be prohibited by State law, decisional or statutory. See Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661. Secondly, as stated in Volume 2, § 396 of the Restatement of the Law of Agency,

"Unless otherwise agreed, after the termination of the agency, the agent:

(a) has no duty not to compete with the principal;"

---

1. Thereafter on September 19, 1961, Huge was dismissed from that suit for lack of venue and the suit against Dental Corporation of America eventually culminated in a consent decree entered March 15, 1962.

However, the right of an employe, after termination of his agency, to freely compete is subject to the

"(b) * * * duty to the principal not to use or to disclose to third persons, on his own account or on account of others, in competition with the principal or to his injury, trade secrets, written lists of names, or other similar confidential matters given to him only for the principal's use or acquired by the agent in violation of duty. * * *"

██ A trade secret, as defined in the Comments following § 757 Restatement of Torts may be

" * *- * any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers. * * * A trade secret is a process or device for continuous use in the operation of the business. Generally it relates to the production of goods, as, for example, a machine or formula for the production of an article. * * *"

" * * * An exact definition of a trade secret is not possible. Some factors to be considered in determining whether given information is one's trade secret are: (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." Volume 4, p. 5 and p. 6, § 757 of Restatement of Torts.

The weight to be given each of these factors depends on the nature of the particular business and the alleged secret.

Elaborate protective measures to prevent others from observing a method or process are not of any avail if, in fact, the method or process is obvious and well known or is disclosed by the product itself or has been disclosed by a patent. Thus, for example, a candy manufacturer could not claim that the use of a thermometer readily available on the market to determine the correct temperature of his mixture, was a secret.

We turn now to a consideration of the nine items claimed as protectible trade secrets and allegedly wrongfully appropriated by defendant.

The first item is concerned with the customer lists for tooth positioners and other resale products. After leaving plaintiff's employ, defendant solicited by mail and personal contact, many of plaintiff's customers who subsequently became defendant's customers. However, plaintiff has failed to prove that defendant either took with him a written list of customers or committed to memory any confidential list maintained by plaintiff. Defendant, while general manager of plaintiff, became personally acquainted with many orthodontists who use tooth positioners in their practice. These orthodontists, he admittedly solicited. He also participated in the many seminars conducted by T. P. Laboratories which instructed orthodontists in the use of positioners. Lists of those in attendance were printed and freely distributed with no attempt at maintenance of secrecy. Lists of orthodontists are published both in professional journals and the Yellow Pages of the Telephone Book. The evidence reveals that plaintiff was less than zealous in maintaining the confidentiality of its customers' names, as shown by its practice of re-using boxes received from its customers for its own mailing to different customers without concealing the name of the original sender.

██ An employe is free to solicit customers of his former employer whose

names are readily available to him through trade journals or directories and he is not precluded from soliciting the names of customers of his former employer which he retains in his memory. (See Vol. 2 of the Restatement of the Law of Agency § 396, Comment b) [2]

██ Plaintiff has failed to establish that defendant in soliciting customers of plaintiff was guilty of appropriating a "trade secret".

Items 2 to 9 involve techniques developed by Dr. Kesling in making the positioner which were taught to defendant while he was employed by the plaintiff. During the course of the trial, the testimony relating to them was taken "in camera" and the exhibits and transcripts were impounded by order of the court. As a continuing protection, this court will refer to each alleged secret by the number given it in Exhibit 19 without a description thereof.

██ Item 2 pertains to the design of the duplicating flask used by plaintiff. Defendant has shown to the satisfaction of the court that certain of these features deemed secrets were not incorporated in the flask used by Dental Corporation of America or by the defendant. The use of a duplicating flask itself is not a secret as it is disclosed by both patents in suit. Although there is a similarity between the plaintiff's and defendant's flask, the plaintiff has failed to show that the methods plaintiff used in making the flask were in any way unique or unobvious. In making the duplicating flasks for Dental Corporation of America and later in his own business, defendant was merely utilizing the skill he had acquired during his employment by plaintiff. The same is true of Items 3 to 9. As to Items

3 and 4 and 9, one need only examine the disclosures of the patent in suit and then explain his needs to a rubber supply company to discover the so-called secret. Items Nos. 5, 6, 7 and 8 are all obvious expedients requiring no more than a general knowledge of elementary mechanical and physical principles and the initiative to peruse the catalogues and sales "offerings" of dental supply houses and hardware and tool stores. In short, Items 3 to 9 involve only the utilization of skills of the trade and cannot be afforded the dignity of "trade secret" status. Although we recognize that a method, process or technique of manufacture need not meet the standard of invention under the patent laws to qualify as a trade secret, it must have some element of uniqueness or novelty that qualifies it as a discovery else the mere assertion of secrecy and the surrounding of the manufacturing process with an aura of mystery and secrecy could circumvent the right of an employe to utilize the skills and knowledge acquired during the course of his employment.

██ For the foregoing reasons the court holds that the plaintiff has failed to establish its cause of action for unfair competition.

This Opinion incorporates the court's Findings of Fact and Conclusions of Law. They are hereby summarized as follows:

## FINDINGS OF FACT.

1. The plaintiff, T. P. Laboratories, Inc. is a corporation of the State of Indiana, having an office and principal place of business at Westville, Indiana.

2. Defendant, Gerald W. Huge, is a citizen of the United States of America and the State of Wisconsin.

---

2. Defendant has cited two New York cases as stating a contrary rule: Witkop & Holmes Co. v. Boyce, 61 Misc. 126, 112 N.Y.S. 874, affirmed 131 App.Div. 922, 115 N.Y.S. 1150, and Peoples Coat, Apron & Towel Supply Co. v. Light, 171 N.Y. App.Div. 671, 157 N.Y.S. 15. However, these cases have been so distinguished and modified in subsequent cases as to be of little value as precedent. See

Abdallah v. Crandall, 273 App.Div. 131, 76 N.Y.S.2d 403, and S. W. Scott & Co., Inc. v. Scott, 186 App.Div. 518, 174 N.Y.S. 583; Town & Country House and Home Service, Inc. v. Newbery, 3 N.Y.2d 554, 170 N.Y.S.2d 328, 147 N.E.2d 724; Vesuvius Fuel Oil Corp. v. Pirraglia, Sup., 128 N.Y.S.2d 2; Addante v. Cinelli, Sup., 143 N.Y.S.2d 244.

3. United States Letters Patent No. 2,467,432 were duly and legally issued on April 19, 1949, to Harold D. Kesling on an application filed in the U. S. Patent Office on September 16, 1946, as a Divisional Application, the original of which was filed July 23, 1943, for an invention entitled "Method of Making Orthodontic Appliances and of Positioning Teeth."

4. United States Letters Patent No. 2,531,222 were duly and legally issued on November 21, 1950 to the same Harold D. Kesling on an application filed November 25, 1946, for an invention entitled "Tooth Positioning Appliance."

5. Plaintiff is the owner by assignment from Harold D. Kesling of the entire right, title and interest in and to both said Method Patent No. 2,467,432 and said Positioner Patent No. 2,531,222 together with the right to recover for past infringement thereof.

6. As the title of both patents indicates, they both relate to that special branch of dentistry known as "Orthodontia", which is concerned with irregular teeth and straightening of those teeth or movement thereof in the patient's mouth from the irregular or undesired position to a more desirable or "ideal" final position.

7. The subject matter of this litigation is a resilient deformable appliance and the method of making it which has impressions therein of the upper and lower teeth—said impressions being in a position different from the positions of the corresponding teeth in the patient's mouth.

8. The patentee of both patents, Harold D. Kesling, is the Secretary-Treasurer of plaintiff as well as a practicing orthodontist, who became a specialist in the field in 1933, after having practiced dentistry for nine years prior to that time.

9. Plaintiff claims infringement of Claims 1 through 8 of Patent No. 2,531,222. Each of these claims relates to a rubber appliance for straightening teeth having the following characteristics:

(a) A body of resilient and deformable material;

(b) said body being of a form to fit within the mouth of a patient;

(c) said body including impressions of the upper and lower teeth of a patient;

(d) said impressions being located in preselected positions adapted to engage the respective upper and lower teeth of the patient;

(e) said impressions being adapted to urge out-of-position teeth into the preselected positions.

10. Plaintiff has claimed infringement of Claims 1, 4, 5 and 6 of Patent No. 2,467,432, Plaintiff's Exhibit 1. These claims require a method comprising the steps of

(1) taking an impression of the upper and lower teeth;

(2) forming a cast model of said teeth;

(3) dissecting the teeth from said cast model;

(4) resetting the teeth in a desired position;

(5) making a resilient solid member having recesses shaped and located to the desired position of said teeth.

11. Defendant claims invalidity of both patents in suit based on

(1) anticipation under § 102, Title 35 U.S.C.A.;

(2) as being in public use more than a year prior to the filing of the application;

(3) as not meeting the standard of invention prescribed under § 103 of Title 35; and

(4) for failure of the patentee to distinctly point out and claim his

invention as required by Title 35 U.S.C.A. § 112.

12. None of the prior art on which defendant relies which includes both patents and printed publications respond to all of the limitations of the patents in suit and hence are not anticipatory of the claims of the patents in suit. Sugatt, Patent No. 646,629 issued in 1900 was cited of record in the prosecution of the Method Patent No. 2,467,432. Remensnyder No. 1,691,785 issued in 1928 was cited in the prosecution of both of the patents in suit.

13. The Remensnyder patent is structurally distinguishable from the Positioner Patent No. 2,531,222 only in the fact that the position of the impression of the patient's teeth correspond with the position in the patient's mouth and are not in a different or preselected position. Said device can, under circumstances described in the Opinion, function to move teeth.

14. Prior art publications in evidence disclose that the use of rubber appliances by orthodontists having impressions of the teeth therein was known at the time of the invention of the patent in suit. The prior art also taught a procedure for making a "set-up" similar to the method described in the Method Patent in suit, although said "set-up" was used only for diagnostic purposes.

15. The prior art also taught the method of making a spring appliance from a duplicate model of the patient's teeth on which the teeth are arranged in a corrected position.

16. A person skilled in the art to which the subject matter of the patents in suit pertains, i. e., orthodontia, is also knowledgeable in the field of dental surgery, oral hygiene and oral surgery, and is familiar with orthodontic devices which apply resilient pressure to the teeth to move them.

17. The invention of the patents in suit, if any there is, is in the conception of adapting devices of the prior art such as disclosed in the Remensnyder patent for use as a tooth positioner by changing the location of the tooth impressions in the rubber mouth piece to different locations in order to urge a patient's teeth into corrected position. The defendant has shown from the state of the art as taught in the patents and publications received in evidence and described in the Opinion, supra, that the subject matter as a whole of the patents would be obvious to a skilled orthodontist.

18. Plaintiff has shown that the tooth positioner enjoyed commercial success but has failed to show that said success is attributable to the claimed invention of the patents in suit.

19. Defendant has failed to prove clearly and satisfactorily by the testimony of Henry Hagman that the invention of the patents in suit were in public use more than one year prior to the date of application of the patents in suit.

20. The claims of the patents in suit when viewed in the context of the specifications and the file wrapper history adequately points out and claims the invention of the patents in suit.

21. The plaintiff has satisfied its burden of proving that the claims in issue find response in the method used and the positioner made and sold by the defendant.

SECOND CAUSE OF ACTION.

1. Plaintiff is engaged in the business of selling orthodontic supplies, some of which it manufactures. One of the items manufactured by plaintiff is the positioning appliance made by the methods claimed in U. S. Patent No. 2,467,432 and claimed as an appliance in Patent No. 2,531,222.

2. In the course of years of such manufacture, plaintiff has developed certain techniques of manufacture, and during said years and to the present time, plaintiff has maintained a general policy of secrecy around the manufacture of its tooth positioner.

3. During the years defendant was employed by the plaintiff, 1953 to 1959, he was taught the technique of making

**362**

tooth positioners and was also informed by the plaintiff in general, that the entire process of manufacture was confidential.

4. Upon termination of his employment, defendant, first as President of Dental Corporation of America, and later as a sole proprietor entered into competition with the plaintiff, by making and selling tooth positioners similar to the plaintiff's. In so doing he used the techniques of manufacturing which he learned at T. P. Laboratories and solicited former customers of the plaintiff.

5. Plaintiff has failed to prove that defendant in soliciting customers of the plaintiff was guilty of appropriating a trade secret.

6. Plaintiff has failed to prove that the alleged trade secrets, Nos. 2 to 9, are entitled to the status of trade secrets since they are either disclosed by the patents in suit, readily ascertainable from the plaintiff's tooth positioner itself, well known in the trade, or obvious expedients and the devices described in the alleged secrets are easily obtainable in the open market.

## CONCLUSIONS OF LAW.

1. The court has jurisdiction of the parties and subject matter of this action.

2. Patents No. 2,467,432 and 2,531,-222 and the claims in issue are invalid under Title 35 U.S.C.A. § 103.

3. If valid, the defendant has infringed the claims in issue by making and selling its tooth positioner.

4. The defendant is entitled to a judgment dismissing the first cause of action for patent infringement.

5. Plaintiff has failed to sustain the second cause of action for unfair competition, and the defendant is entitled to a judgment dismissing said cause of action.

6. Every finding of fact that is deemed a conclusion of law is hereby adopted as a conclusion of law.

It is therefore ordered: The Clerk of Court shall enter a judgment of dismissal of Civil Action No. 61-C-275 against the plaintiff, together with the costs herein.