**ABILITY SEARCH, INC., Plaintiff,**

v.

**Carole LAWSON, Rita Raz and Raz Consulting, Inc., Defendants.**

**No. 80 Civ. 0915 (CBM).**

United States District Court, S.D. New York.

Oct. 27, 1981.

---

Gerstl & Gorman by Hugo N. Gerstl, Monterey, Cal., Edward J. Tighe, New York City, for plaintiff.

Kreisberg & Shapiro by B. Kreisberg, White Plains, N.Y., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MOTLEY, Chief Judge.

This is an action for injunctive and monetary relief based on plaintiff's claim that defendants, plaintiff's former employees, breached their fiduciary obligations while employed by plaintiff and after starting their own business. Defendants counterclaimed for commissions which plaintiff allegedly owes them. Plaintiff was granted a preliminary injunction on June 11, 1980, prohibiting defendants from using plaintiff's files and certain confidential information they learned while employed by plaintiff. The case was tried on December 17 and 18, 1980, and January 5, 6, 7, 8 and 9, 1981, without a jury.

## FINDINGS OF FACT

Plaintiff, Ability Search, Inc. (Ability Search), is a Washington, D.C., corporation engaged in the business of placing individuals in executive positions for a fee. It was formed in 1964. Ability Search has its main office in Washington, D.C., and a smaller office in New York City.

Defendant Rita Raz (Raz) was hired by Ability Search as a consultant in its New York office in July, 1978. Defendant Carole Lawson (Lawson) was hired in the same capacity in May, 1978. Their duties included interviewing and screening candidates who submitted resumes to Ability Search, ascertaining clients' personnel needs, developing new clients and making placements. Ability Search used the term "client" to signify corporations or companies at which it placed individuals and the term "candidate" to signify individuals who submitted their resumes to Ability Search and who Ability Search attempted to place. Defendant Raz Consulting, Inc., was formed for tax purposes in October, 1979, and performed the same duties performed by Raz. Lawson and Raz were the only consultants in the New York office.

Pursuant to the employment contracts entered into between Ability Search and defendants, Raz and Lawson were entitled to a percentage of any fee earned by Ability Search as a result of their efforts. The agreements also provided that in the event that Ability Search received any revenues after the termination of the agreement as a result of services rendered by the consultant before termination, Ability Search would pay the usual compensation to the consultant. Raz and Lawson signed nondisclosure agreements which acknowledged the confidentiality of certain information about Ability Search's clients and candidates. Plaintiff, however, does not rely on these agreements for the relief it seeks in this action.

Ability Search specializes in placing candidates in the operations research and management science fields. Most of the companies that hire personnel in these fields are among the Fortune 500 companies and the eight major accounting consulting firms. Many of these companies have several divisions or departments which hire individuals in these fields. Many of these companies do business with several executive recruiting agencies such as Ability Search.

Ability Search maintains files, books and other records which contain information about candidates and clients not ascertainable by the general public. With respect to clients, such information includes names and telephone numbers of individuals within the company to contact, profiles of the types of candidates generally hired by a particular company, particular job listings and Ability Search's prior experience with the company. Information about candidates includes resumes, additional information concerning the candidates' characteris-

tics and needs, a list of companies to which the candidate has been referred and the results of these referrals. While employed at Ability Search, Raz and Lawson had access to books, records, files and roladex systems which contained this information, with the exception of each other's private files.

It was the intention of the president of Ability Search, Eva June (June), that the offices of Ability Search operate in a very systematic fashion. This system was described to each consultant when she began work at Ability Search and was set forth in a training manual. The system for processing resumes at the New York office was as follows.

The administrative assistant or secretary opened the mail received by Ability Search and logged in resumes received from candidates. Resumes were assigned to a particular consultant according to an alphabetical system. If a resume appeared to have potential, the consultant circled on a "hot sheet" the clients to whom she wanted the resume sent. The "hot sheet" was a list of companies with which Ability Search did business. The consultant placed the resume and "hot sheet" in the secretary's file to be retyped, if necessary, and mailed in pre-addressed envelopes. All resumes were to be stamped with Ability Search's name.

When a consultant learned of a new requirement for personnel in the operations research or managing sciences field, she was to write a "job order" with this information and add it to a book containing job orders. The "hot sheet" and pre-addressed envelopes were also updated as new information was received. Copies of all information, such as placements, job orders and resumes, were sent from the New York office to the Washington, D.C. office.

Raz and Lawson failed to follow the normal office procedure outlined above in a number of ways, particularly during the last three months of their employment at Ability Search. Both often mailed candidates' resumes to clients without the Ability Search stamp, and sometimes with no identification of Ability Search at all. Some resumes stated simply "Contact Rita Raz" or "Contact Carole Lawson," with Ability Search's telephone number below. Lawson also mailed to clients a few resumes with the words "Contact Carole Lawson" and her home telephone number which also rang at Ability Search's office. Raz placed an advertisement at Columbia University which stated that resumes should be sent to her at her home address. The ad included the Ability Search telephone number but did not mention Ability Search by name. Raz also advised some candidates to contact her at home.

Raz and Lawson mailed candidates' resumes to clients without the Ability Search stamp because, they testified, the stamp detracted from the attractiveness of the resume as submitted by the candidate. They also testified that identifying Ability Search was not necessary where the client had dealt with them in the past and that, in some cases, it might even make a client less likely to read the resume. The primary objective, according to Raz and Lawson, was to attract the attention of hiring managers and to make placements, rather than to follow office procedures.

Moreover, Raz and Lawson also failed to disseminate information throughout the Ability Search offices as they were instructed to do. They often arrived at the office before the secretary, who was frequently late. They opened the mail, selected resumes and processed and mailed them without the assistance of the secretary. When Raz succeeded in obtaining new contacts at companies or in learning of new openings through her own creative efforts, she did not always fill out job orders or otherwise share the information with other consultants at the Ability Search offices.

The evidence disclosed one instance of diverting a fee which belonged to Ability Search while defendants were still employed by Ability Search. In December, 1979, Raz placed a candidate at the Indianapolis office of General Telephone and Electric without recording in the Ability Search books and files any of her dealings with the company. Raz sent General Telephone and

Electric an invoice on the letterhead of Corporate Recruiters, Inc., a corporation formed by Raz and her husband. General Telephone and Electric paid Corporate Recruiters, Inc. a fee of $10,500 for the placement and mailed the check to Raz's home address. Raz diverted the fee because she wanted "to protect herself" in case she left Ability Search and did not receive commissions which Ability Search owed her.

Both Lawson and Raz admitted that they had, on occasion, considered leaving Ability Search during the last few months of their employment there. They claimed to be dissatisfied with the training they were receiving because Eva June was seldom in the New York office to supervise and they were left to their own devices. Having learned the job, both Raz and Lawson wanted to work together in their own business. There was, consequently, some evidence that defendants actually contemplated leaving to set up their own business but no evidence that they actually began preparing for their new business while they were still employed by Ability Search. Nor is there evidence that they advised any client or candidate that they were planning to leave Ability Search.

The earnings of the New York office of Ability Search increased substantially while Lawson and Raz, the only two consultants, were employed there. The office sustained a loss of $14,000 in the fiscal year ending October 31, 1978. In the fiscal year ending October 31, 1979, it earned a gross profit in the amount of $89,000. In March, 1979, Raz received an increase in commissions because of the "great progress" she had made at Ability Search.

In November, 1979, during a visit from the Washington, D.C., office, June discovered that Raz was mailing resumes to clients without the Ability Search stamp. June instructed Raz to identify Ability Search on all resumes she mailed. June discovered more resumes without the Ability Search stamp in December, 1979, and instructed both Raz and Lawson to use the stamp. Finally, on January 9, 1980, June came across resumes processed by Lawson which did not bear Ability Search identification. On January 10, June informed Lawson that her employment with Ability Search was terminated. Lawson told June that Lawson and Raz were planning to go into business together. June terminated Raz's employment on January 15, 1980, when June received a telephone call from General Telephone and Electric regarding resumes which Raz had never recorded.

June requested from Lawson and Raz a list of candidates whose resumes they had processed but who had not yet been placed. On January 15, June instructed Lawson not to contact these pending candidates or to otherwise follow-up on their progress in obtaining a position. June gave Raz the same instructions on January 16.

When Lawson left Ability Search on January 10, she took her briefcase containing a number of files, including files of candidates who were not pending. In addition, on January 13, she entered the Ability Search office and remained there approximately twenty minutes. Lawson returned five candidate files and seven resumes to Ability Search in open court during the preliminary injunction hearing on March 3, 1980.

In spite of June's direction not to contact candidates, Raz and Lawson contacted pending candidates and clients to whom the candidates' resumes were sent in order to determine whether the candidates had been placed and whether Raz and Lawson had consequently earned commissions.

The abrupt departure of Raz and Lawson left the New York office of Ability Search in a state of confusion. As June and Gregory Walling, a vice president of Ability Search who came from the Washington office, attempted to follow up on the work left behind by the New York consultants and to answer the questions of clients and candidates who called, they discovered that several files were missing. June and Walling also discovered that Raz had failed to notify Ability Search of resumes that she mailed to clients and of job orders that she received from clients. Hence, June and Walling were often unable to answer the

questions of candidates and clients concerning the current status of candidates who were being placed by Raz and Lawson at the time of their termination. Several companies expressed dissatisfaction with the disorderly manner in which the business of the New York office was being conducted. In addition, several candidates and clients who called the New York office refused to discuss the progress of candidates with June or Walling, expressing a preference for speaking with Raz or Lawson.

On February 11, 1980, Raz and Lawson filed corporate papers for Analytic Recruiters, Inc. (Analytic), to operate a recruiting business similar to that of Ability Search. Analytic, as Ability Search, specializes in the operations research and management science fields.

Raz and Lawson used several techniques to obtain business for their new recruiting firm. They placed advertisements in the *New York Times* and *Wall Street Journal,* as well as in various professional publications, followed advertisements of job openings in journals and newspapers, obtained telephone directories from Fortune 500 companies and attended conventions of professionals in the operations research and managing science fields. Because Raz and her husband belonged to the Operations Research Society of America (ORSA) and to The Institute of Management Science (TIMS), Raz owned an ORSA/TIMS directory which lists members of these organizations. This directory is one of the best sources of names of people interested in hiring specialists in operations research and managing science. These techniques are typical of those used by executive recruiting firms, including Ability Search, to attract candidates and clients.

Raz's husband, Daniel Raz, was an exceptional source of contacts for Analytic. Mr. Raz is a vice president in the Managing Sciences Division of Chase Manhattan Bank. He has access to people who hire in the operations research and managing science fields and knows of available positions.

Raz and Lawson also sought to obtain business for Analytic by soliciting candidates and clients with whom they dealt while employed at Ability Search. Raz and Lawson mailed unsolicited announcements and made telephone calls to many Ability Search clients and candidates with the message that they had formed a new company and would like to continue doing business with these clients and candidates. Several candidates who were served by Raz and Lawson while employed at Ability Search also sought out Raz and Lawson after Analytic was formed.

Analytic earned $288,814 in placement fees from February to July, 1980. Analytic placed eight individuals who were also candidates of Ability Search. Thirty-four of the placements made by Analytic were at companies which were also clients of Ability Search. Ability Search experienced a decrease in gross revenue in the amount of $137,000 between fiscal years 1979 to 1980.

Ability Search claims that it was injured by the wrongful acts of Raz and Lawson in two ways. First, Ability Search claims that Raz and Lawson diverted fees from Ability Search to Analytic by wrongfully soliciting Ability Search clients and candidates after the termination of their employment at Ability Search. Second, Ability Search claims that the improper behavior of Raz and Lawson while they were employed at Ability Search, particularly their failing to fill out job orders and sending resumes to clients without Ability Search identification, resulted in the loss of goodwill. Ability Search requests as relief for these allegedly wrongful acts of defendants $92,-000, representing the decrease in the value of Ability Search's New York office between fiscal years 1979 and 1980, plus $137,-000, representing the decrease in gross revenues received by Ability Search's New York office during this period. Ability Search also requests $259,365, which equals the amount of revenues earned by Analytic as a result of business done with clients and candidates of Ability Search. In addition, Ability Search claims that it is entitled to the $10,500 fee paid by General Telephone and Electric to Corporate Recruiters, Inc.

Ability Search owes Raz $61,148.60 and Lawson $31,071.37 in commissions which they earned pursuant to the employment agreement. Ability Search claims that Raz and Lawson forfeited their right to these commissions because they committed disloyal acts while employed by Ability Search.

Raz and Lawson owed a fiduciary duty to Ability Search and were prohibited while employed by Ability Search from acting in a disloyal manner inconsistent with this trust relationship. *Duane Jones v. Burke,* 306 N.Y. 172, 117 N.E.2d 237 (1954). Under the New York rule of agency, a disloyal employee forfeits his right to compensation during the period of his disloyalty. *Lamdin v. Broadway Surface Advertising Corporation,* 272 N.Y. 133, 5 N.E.2d 66 (1936); *Herman v. Branch Motors Express Co.,* 67 Misc.2d 444, 323 N.Y.S.2d 794 (Civ. Ct.1971) (Younger, J.)

Generally an employee is not barred from competing with his former employer. He may solicit customers of his former employer who are openly engaged in the business or whose identity is readily or equally available to him. An employee may not, however, solicit the customers of his former employer if they would be unknown to the employee but for information obtained during his prior employment. Such customer lists and files are protected as trade secrets. *Velo-Bind, Inc. v. Scheck,* 485 F.Supp. 102 (S.D.N.Y.1979); *AGA Aktiebolag v. ABA Optical Corp.,* 441 F.Supp. 747 (E.D.N.Y. 1977); *Fortune Personnel Agency Inc. v. Livingston,* 102 Misc.2d 369, 423 N.Y.S.2d 361 (Sup.Ct.1979); *Leo Silfen, Inc. v. Cream,* 29 N.Y.2d 387, 328 N.Y.S.2d 423, 278 N.E.2d 636 (1972); *Town and Country House and Home Service v. Newberry,* 3 N.Y.2d 554, 170 N.Y.S.2d 328 (1958).

The court finds that information about *candidates* contained in Ability Search files and records is entitled to trade secret protection since this information is not readily ascertainable by defendants. Ability Search is therefore entitled to a permanent injunction restraining defendants from utilizing this information for the benefit of Analytic. The court finds, however, that Ability Search is not entitled to damages in the amount of revenues received by Analytic for the placement of the eight candidates who were also candidates of Ability Search. The evidence at trial revealed that each of these candidates contacted Analytic and requested its services, either as a result of seeing Analytic's newspaper advertisement or by seeking out Raz or Lawson at home. Defendants were not required to refuse to do business with candidates who contacted them simply because they were also candidates of Ability Search.

The court further finds and concludes that Ability Search is not entitled to a permanent injunction with respect to information about corporate clients since it has failed to prove that defendants utilized any information about such clients which was not available from public sources or readily ascertainable by defendants in conducting their own business. For the same reason, Ability Search is not entitled to damages in the amount of revenues earned by Analytic for placements made at companies which were also clients of Ability Search. Defendants were not prohibited from doing business with these companies, particularly since these companies hire many individuals in the operations research and managing science fields and deal with many different executive recruiting firms. Moreover, Ability Search continues to do business and receive fees from these clients, contrary to its assertion that its goodwill with clients had been damaged by defendants.

The court finds and concludes that Ability Search is not entitled to damages for the loss in the value of its business between fiscal years 1979 and 1980 because it did not prove that this loss was caused by the wrongful acts of Raz and Lawson. The court finds that this loss stemmed from the fact that both Lawson and Raz had been discharged and June, with the assistance of Walling, had to try to carry on the business at the office. The court also finds that the increase in 1979 in the business of the New York office was due to the effectiveness of Raz and Lawson.

While it is possible that defendants' failure to identify Ability Search on resumes and to share information with other Ability Search consultants resulted in the loss of goodwill, plaintiff failed to adduce any evidence as to what portion, if any, of plaintiff's total loss was attributable to defendants' conduct. As stated above, plaintiff did not offer evidence that any of its clients ceased to do business with plaintiff as a result of defendants' actions.

■■ Finally, the court finds that Raz forfeited her right to the commission she earned on the placement of Mr. Sumera at General Telephone and Electric because of her wrongful diversion of the fee to Corporate Recruiters, Inc. Ability Search is therefore entitled to the entire amount of this fee. The court finds, however, that defendants are entitled to commissions which they earned, pursuant to their employment agreement with plaintiff, on placements made after their terminations at Ability Search as a result of their services while still employed at Ability Search. The court finds that plaintiff's evidence that defendants' deviations from normal office procedure were part of a disloyal scheme to divert business from Ability Search is fairly evenly balanced with defendants' testimony and other evidence adduced by defendants that their objective was only to make placements for Ability Search in an expedited fashion in view of the situation at the office and being allowed to work at home. Plaintiff did not meet its burden of producing sufficient evidence to tip the scale slightly in its favor on this hotly disputed issue of fact. The court finds, therefore, that defendants' deviations from normal office procedure were not so substantial as to deprive them of their right to compensation for making placements from which plaintiff profited.

The parties shall submit a judgment on five (5) days' notice.