William HANCOCK, Plaintiff,

v.

ESSENTIAL RESOURCES, INC., Martin W. Davis and Jill Davis, Defendants.

ESSENTIAL RESOURCES, INC. and Martin W. Davis, Third–Party Plaintiffs,

v.

NETWORK 1, INC. a Delaware Corporation doing business in the State of New York and Robert M. Russo, Third–Party Defendants.

No. 91 Civ. 0213 (KTD).

United States District Court, S.D. New York.

April 28, 1992.

Rogovin Golub Bernstein & Wexler, New York City, for plaintiff/third-party defendants; Benjamin J. Golub, of counsel.

John J. Pribish, New York City, for defendants/third-party plaintiffs.

## MEMORANDUM & ORDER

### KEVIN THOMAS DUFFY, District Judge:

Plaintiff William Hancock commenced this diversity action to recover damages against defendants Essential Resources, Inc. (the "Company"), Martin W. Davis, and Jill Davis for breach of contract and a related fraud.[1] Defendants counterclaimed for injunctive relief based on unfair competition and for damages based on: (1) breach of employee fiduciary obligations; (2) fraud; (3) interference with prospective economic gain; and, (4) interference with contractual relations. The Company and Martin Davis also filed a third-party complaint against Network–1, Inc. ("Network") and Robert M. Russo,[2] seeking injunctive relief on the grounds of misappropriation of proprietary and confidential information, specific performance of Russo's employment agreement with the Company, and damages for: (1) breach of fiduciary obligations; (2) fraud; (3) interference with

prospective economic gain; and, (4) interference with contractual relations. Third-party defendants counterclaimed for damages based on breach of contract and a related fraud. Defendants/third-party plaintiffs (collectively, "ERI") now seek a preliminary injunction[3] enforcing the restrictive and confidentiality covenants of Russo's employment agreement with the Company and enjoining Hancock, Russo and Network from: (1) using the Company's customer lists, customer data, customer mailing lists, and other proprietary and/or confidential information (collectively, "Customer Materials"); and, (2) soliciting the Company's customers.[4]

■ A preliminary injunction is a drastic remedy. *Borey v. National Union Fire Ins.,* 934 F.2d 30, 33 (2d Cir.1991). Such relief is warranted only where the movant demonstrates: (1) irreparable harm or injury and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in favor of the movant. *See Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979). Applying this standard to the instant action, it is clear that ERI has no right to the injunctive relief requested.

■ A preliminary injunction cannot issue based upon the restrictive and confidentiality covenants in Russo's employment agreement with the Company because those covenants are no longer operative. In pertinent part, the covenants barred Russo from competing with the Company, or using/disclosing information about Company customers, while he was employed by

---

1. The Company is engaged in training, consulting, and networking services for users of computers and software manufactured by the Digital Equipment Corporation ("DEC"). Martin and Jill Davis are principals and officers of the Company, Martin Davis serving as its President at all times relevant to the instant action. Hancock taught and consulted for the Company from on or about March 1986 to September 1990.

2. Network is engaged in training and consulting services for users of DEC's computer products. Pursuant to a written agreement dated April 8,

1987, and modified on or about February 1990, Russo worked as the Company's Vice–President of Sales and Marketing until on or about August 1990. Russo and Hancock incorporated Network in July 1990 and currently serve as its principals and officers.

3. ERI does not specify what rule of procedure it moves pursuant to. I will presume that it moves pursuant to Fed.R.Civ.P. 65(a).

4. It is undisputed that New York law applies to the instant action.

the Company. *See* Third–Party Compl. at Exh. B. They also barred Russo from competing with the Company, soliciting its customers, or utilizing the Customer Materials for one year following the termination of his employment. *Id.* As to the enforceability of the covenants, ERI concedes that the Company and Martin Davis executed an agreement with Russo (the "Release"), dated August 17, 1990, which forever releases Russo from any claims asserted by the Company or Davis against him and which supersedes all other agreements between the signatories. *Id.* at ¶¶ 29, 30 and Exh. D. ERI argues, however, that the Release was fraudulently induced by Russo and must now be rescinded.

Specifically, ERI alleges that, when Martin Davis asked him what he planned to do after leaving the Company, Russo stated that he was going to stay home, watch the U.S. Open Tennis Tournament, and maybe help his wife with her dessert business. Martin Davis Aff. in Support of Application for Preliminary Injunction at ¶ 6. Contrary to his representation, ERI claims, Russo had already taken steps to open a competing business, Network. *Id.* at ¶¶ 7–10. Russo admits that he made the statement in question, but maintains that he did so *after* the parties had executed the Release. Russo Aff. in Opposition at ¶ 15. Russo also sets out that, both on the date he signed the Release and in a subsequent telephone conversation, he indicated to Martin Davis that he and Hancock "were discussing the prospect of entering in to a new business which would possibly involve the writing of certain software together with consulting and marketing activities." *Id.* at ¶ 14.

ERI avers nothing of substance to show that the Release was tainted by fraud. Conclusory allegations simply do not suffice. Therefore, there is no reason to rescind the Release. Given that the Release bars any claims by ERI against Russo, and effectively supersedes the restrictive and confidentiality covenants in Russo's employment agreement, ERI cannot sustain the burden of demonstrating either a likelihood of success on the merits, or a sufficiently serious question going to the merits, as to any claim based on the covenants. Thus, the request to enjoin Russo from violating the covenants must be denied.

■ A preliminary injunction barring Hancock, Russo and Network from using ERI's Customer Materials and soliciting ERI's customers is also unwarranted. ERI grounds this request for injunctive relief in claims of misappropriation of proprietary and confidential information and unfair competition. Despite the label given to the asserted misappropriation claim, it is evident that ERI is attempting to make out a claim for misappropriation of trade secrets. The threshold issue on this claim is whether the Customer Materials are entitled to trade secret protection.

"Generally, where the customers are readily ascertainable outside the employer's business as prospective users or consumers of the employer's services or products, trade secret protection will not attach and courts will not enjoin the [former] employee from soliciting his [former] employer's customers." *Leo Silfen, Inc. v. Cream,* 29 N.Y.2d 387, 392, 328 N.Y.S.2d 423, 427, 278 N.E.2d 636, 639 (1972) (internal citations omitted); *see also Churchill Communications Corp. v. Demyanovich,* 668 F.Supp. 207, 211 (S.D.N.Y.1987).

■ In deciding whether information constitutes a trade secret, courts consider: (1) the extent to which the information is known outside of the employer's business; (2) the extent to which it is known by employees and others involved in the employer's business; (3) the measures the employer takes to guard the information's secrecy; (4) the value of the information to the employer and his or her competitors; (5) the amount of money or effort the employer expended in developing the information; and, (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *See Eagle Comtronics, Inc. v. Pico, Inc.,* 89 A.D.2d 803, 803–04, 453 N.Y.S.2d 470, 472 (4th Dep't 1982) (quoting Restatement of Torts § 757, comment b (1939)).

ERI states that the Company developed the Customer Materials by: (1) purchasing

published lists from several sources for thousands of dollars; (2) paying approximately five salespeople per year to broaden the Company's customer base; (3) attending 15 to 20 trade shows at a cost of approximately $10,000 per show; and, (4) advertising in trade publications. Martin Davis Aff. in Support of Application for Preliminary Injunction at ¶ 19. To ensure the secrecy of the Customer Materials, ERI asserts, Martin Davis continuously:

(a) informed all employees routinely of the confidentiality of the information (including customers and customer lists) with which they were working; and

(b) informed all employees routinely that they could not copy, modify and/or destroy information with which they worked; and

(c) had certain key employees sign written employment agreements containing confidentiality and other like clauses; and

(d) restricted sales people to only access those customers whom they serve for [the Company] and to only information concerning those customers; and

(e) restricted access of secretaries to limited information concerning all customers; and

(f) informed instructors that the information, and in particular, the customers and customer lists, to which they have access was and is confidential.

*Id.* at ¶ 21.

In response to ERI's claims regarding the development of the Customer Materials, Russo and Hancock assert that the Company obtained the vast majority of its customers through government publications and lists rented from mailing list companies for approximately $100 per 1,000 names. Russo Aff. in Opposition at ¶¶ 26–28; Hancock Aff. in Opposition at ¶ 19. Russo further states that the five salespeople allegedly hired to broaden the Company's customer base essentially made cold calls from the rented customer lists. Russo Aff. in Opposition at ¶ 28. Russo also maintains that almost all the trade shows which ERI refers to were DEC shows. Lists of DEC show attenders, he continues, could be purchased. *Id.*

Concerning the secrecy of the Customer Materials, Russo asserts that, during his tenure at the Company, all personnel had access to the Company's customer lists and no one was ever instructed that such lists were confidential. *Id.* at ¶ 25. Similarly, Hancock states that, while he was involved there, the Company imposed no restrictions or guidelines on its personnel with respect to the circulation of customer lists and related information. Hancock Aff. in Opposition at ¶ 23.

At first blush, ERI's various allegations concerning a misappropriation of the Company's trade secrets seem to engender a fair ground for litigation. Upon closer scrutiny, however, it is apparent that ERI fails to put forward anything of substance to support the allegations with the materiality and weight prerequisite to the issuance of a preliminary injunction. While the allegations may suffice to make the issues a ground for litigation, they do not suffice to make the issues a *fair* ground for litigation.

Turning to ERI's unfair competition claim, a court may issue a preliminary injunction on the grounds of unfair competition although the customer information in question does not constitute a trade secret. *See Ecolab, Inc. v. Paolo, et al.*, 753 F.Supp. 1100, 1110 (E.D.N.Y.1991) (citing *Continental Dynamics Corp. v. Kanter*, 64 A.D.2d 975, 408 N.Y.S.2d 801 (2d Dep't 1978)). However, to receive such relief, the movant must show that there was an unauthorized physical taking and exploitation of an employer's confidential customer information by an employee. *Id.* Setting aside the issue of whether Hancock was an employee of the Company or merely an independent contractor, and assuming that the Customer Materials were kept confidential, a preliminary injunction cannot issue against Hancock, Russo and Network because ERI has failed to establish the requisite unauthorized taking and exploitation of the Customer Materials. Absent this proof, there seems little likelihood of ERI's success on the merits.

ERI alleges that, on August 10, 1990, at approximately 1:59 a.m., a person using Hancock's identification number accessed the Company's DEC VAX computer files and copied the file containing the Customer Materials onto a TK–50 magnetic tape which had been inserted into the computer. Mack Aff. in Support of Application for Preliminary Injunction at ¶¶ 15–19. Hancock flatly denies the alleged misappropriation. Hancock Aff. in Opposition at ¶¶ 11–18. As Hancock indicates, ERI avers nothing of substance to show that Hancock, as opposed to any other person at the Company, put the tape into the machine, accessed the files, and copied the information at issue. Preliminary injunctive relief cannot rest on mere hypotheticals.

For the foregoing reasons, ERI's motion for a preliminary injunction is denied in its entirety.

SO ORDERED.