**Emil SZAFRAN, Plaintiff–Appellant,**

v.

**SANDATA TECHNOLOGIES, INC., Sandata Home Health Systems, Inc., Sandata Acquisition Corp. and Bert Brodsky, individually and as Chief Executive Officer and principle owner of the corporate defendants, Defendants–Appellees.**

No. 05–6193–cv.

United States Court of Appeals, Second Circuit.

Nov. 6, 2006.

---

Sanford F. Young, Law Offices of Sanford F. Young, P.C., New York, NY, for Plaintiff–Appellant.

Martin D. Edel, Miller & Wrubel, P.C. (Dana B. Zimmerman, of counsel), New York, NY, for Defendants–Appellees.

PRESENT: Hon. WALKER, Hon. CHESTER J. STRAUB, Circuit Judges, Hon. TIMOTHY C. STANCEU,* Judge.

## SUMMARY ORDER

Plaintiff–Appellant Emil Szafran appeals from the final judgment of the District Court for the Eastern District of New York (Leonard Wexler, *Judge* ), entered on August 8, 2005 following jury trial, in favor of Defendants–Appellees Sandata Technologies, Inc., Sandata Home Health Systems, Inc., Sandata Acquisition Corp., and Bert Brodsky, the principal owner of the corporate defendants (collectively, "Sandata"). We assume the parties' familiarity with the facts, procedural posture, and specification of issues on appeal.

Following the close of evidence, the District Court entered judgment as a matter of law for Sandata on Szafran's breach of contract claim, based on an independent determination that the contract at issue ("Consulting Agreement") was fraudulent and illegal. Specifically, the District Court found that as part of the agreement, Szafran delivered to Sandata the names of his former customers, in breach of his previous consulting agreement ("COSI Agreement") with Sandata's competitor, Computer Outsourcing, Inc. ("COSI"). Szafran objects to the District Court's ruling on three grounds, one substantive and two procedural. First, Szafran asserts that the District Court incorrectly held that the Consulting Agreement was void for illegality, because he never misappropriated any confidential information from COSI, and in any event, the restrictive covenant in the COSI Agreement is unenforceable under New York law. Second, Szafran contends that the District Court acted improperly by dismissing the claim without giving any prior notice, and without affording his counsel an opportunity to respond with argument. Third, Szafran argues that the District Court erred in raising the issue of illegality *sua sponte* because illegality is an affirmative defense that must be specifically pled, which Sandata failed to do.

■ This Court reviews a grant of judgment as a matter of law *de novo. Nelson v. Metro–North Commuter R.R.,* 235 F.3d 101, 105 (2d Cir.2000); *see also Vermont Plastics, Inc. v. Brine, Inc.,* 79 F.3d 272, 277 (2d Cir.1996) (stating that the reviewing court must "draw[ ] all reasonable inferences regarding the weight of the evidence and the credibility of the witnesses

* The Honorable Timothy C. Stanceu, United States Court of International Trade, sitting by designation.

in favor of [the] plaintiff" (alteration in original)). Our *de novo* review of the District Court's ruling leads us to conclude that it was wrong on the substance; we therefore reverse it on that basis without reaching Szafran's procedural objections. The District Court concluded that the Consulting Agreement was illegal because it caused Szafran to violate the confidentiality and noncompete provisions of the COSI Agreement. The first provision prohibited Szafran from divulging to outsiders any "Confidential Information"—defined as "information relating to the Customer List, customers or markets of the Company and all other confidential knowledge, data and information related to [COSI's] business or affairs"—either during or after the term of the agreement. Szafran admitted at trial that the customer list, attached as Schedule B to the Consulting Agreement, included the names of some COSI customers. However, Szafran also testified that Schedule B "consisted of all former … customers [of Sandata's subsidiary], all those customers Sandata knew about, and they asked for them to be listed because they wanted those specifically." The COSI Agreement expressly provides that any "information which … becomes generally available to the public in any manner or form through no fault of Consultant" is excluded from the definition of "Confidential Information." If, as Szafran testified, Sandata already knew the identities of the Schedule B companies, that information fell outside the scope of Szafran's confidentiality obligation. *Cf. N. Atlantic Instruments, Inc. v. Haber,* 188 F.3d 38, 44 (2d Cir.1999); *Leo Silfen, Inc.*

*v. Cream,* 29 N.Y.2d 387, 392, 278 N.E.2d 636, 640, 328 N.Y.S.2d 423, 428 (1972).

As for the noncompete provision, it barred Szafran from "work[ing] at or solicit[ing] work from any customer of [COSI] for which [Szafran] performed any Consulting Services" until April 1, 1998. The May 31, 1997 effective date of the Consulting Agreement, and the vague testimony of Szafran's brother that Szafran solicited the Schedule B clients "[a]t various times" between 1997 and May 31, 2002, may raise some suspicions. Szafran specifically testified, however, that he did not solicit any of COSI's customers before April 1, 1998. In sum, if there was some record evidence that supported the District Court's conclusion that the Consulting Agreement induced Szafran to breach his obligations under the COSI Agreement, there was at most a material factual dispute that made judgment as a matter of law improper. *See Mickle v. Morin,* 297 F.3d 114, 120 (2d Cir.2002) ("[Judgment as a matter of law] is thus proper only if the evidence is such that, without weighing the credibility of the witness or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached." (internal quotation marks omitted)). Accordingly, we vacate the District Court's entry of judgment on the breach of contract claim, and we remand for further proceedings.[1]

Szafran's next set of challenges concerns his age discrimination and retaliation claims, which the District Court submitted to the jury. Following deliberation, the

---

1. Sandata argues that even if the District Court was incorrect on the illegality issue, the judgment should nevertheless be affirmed because Szafran is not named as a party in the written Consulting Agreement and is therefore unable to enforce it. Although the District Court, in its oral ruling, mentioned that it was Szafran's brother who actually signed the Consulting Agreement, it ultimately rested its entry of judgment on the illegality determination, not on a failure of proof of an agreement between the parties. Furthermore, Sandata never made this argument to the District Court. Because the issue was never properly raised below, we decline to consider it here.

jury returned a special verdict, in which it found that Szafran was an independent contractor, not an employee of Sandata. Citing this Court's decision in *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111 (2d Cir.2000), Szafran asserts that the District Court erred in instructing the jury to consider his tax treatment and eligibility for employee benefits in deciding his status. Szafran also argues that the jury verdict cannot stand because it was unreasonable and unsupported by the evidence.

■■■■ Szafran never raised his *Eisenberg* objection at trial; he therefore "waive[d] the right to make that instruction the basis for an appeal." *Fogarty v. Near N. Ins. Brokerage*, 162 F.3d 74, 79 (2d Cir.1998). In any event, Szafran misreads *Eisenberg*: There, the Court held that the tax treatment and benefits factors should not be given "extra weight" in discrimination cases, not that they should be discarded altogether. *Eisenberg*, 237 F.3d at 117. Szafran's second argument is similarly unavailing, for the trial record contained ample evidence from which the jury could have reasonably concluded that Szafran was an independent contractor. For instance, Sandata's Vice–President testified that unlike the sales employees, Szafran "had the freedom of coming and going as he chose," "planned his own schedules and ... made his own arrangements when he was to meet with prospects," and did not have to report to the vice president of marketing. Sandata also adduced evidence that Szafran was paid a fixed consulting fee regardless of the number of hours he worked, that he received 1099 tax forms instead of W2s, and that he was ineligible for employee benefits. Because Szafran has failed to show that there was "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or such an overwhelming amount of evidence in [his] favor ... that reasonable and fair minded men could not arrive at a verdict against [him]," we will not disturb the jury's verdict. *Gronowski v. Spencer*, 424 F.3d 285, 292 (2d Cir.2005) (internal quotation marks omitted); *see also Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 171 (2d Cir.1998).

In his final challenge, Szafran asserts that he is entitled to a new trial because the District Court exhibited an undeserved hostility towards him and his counsel, and openly showed favoritism to the defense. "In reviewing a challenge to a trial judge's conduct, we determine not 'whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid[, but] ... whether the judge's behavior was so prejudicial that it denied [a party] a fair, as opposed to a perfect, trial.'" *Shah v. Pan Am. World Servs., Inc.*, 148 F.3d 84, 98 (2d Cir.1998) (alterations in original), *cert. denied*, 525 U.S. 1142, 119 S.Ct. 1034, 143 L.Ed.2d 42 (1999). Specific remarks and rulings cannot be viewed in isolation; "it is only after an examination of the entire record that we can come to a conclusion about the conduct of the district court." *United States v. Manko*, 979 F.2d 900, 905–06 (2d Cir.1992) (internal quotation marks omitted), *cert. denied*, 509 U.S. 903, 113 S.Ct. 2993, 125 L.Ed.2d 687 (1993).

■■■■ We have reviewed the entire record in light of Szafran's assertions, and while we find some of the District Court's comments to be troubling, we conclude that its overall conduct was not so prejudicial as to deprive Szafran of a fair trial. First, although Szafran complains that the District Court pressured his trial counsel into changing his witness order, a district court enjoys " 'wide latitude' ... in controlling 'the mode and order' of [the presentation of evidence] to promote the effec-

tive ascertainment of the truth." *Manley v. Ambase Corp.,* 337 F.3d 237, 247 (2d Cir.2003) (citations omitted). We find that the District Court did not exceed its allowable discretion in managing the flow of the trial. Second, Szafran contends that the District Court improperly became his cross-examiner. The record reflects that the District Court asked Szafran a number of questions, some of which were more conclusory than open-ended in style. We reject Szafran's contention that the District Court acted impermissibly, however, as its inquiries were clearly intended "to clarify ... legal and factual issues and thus minimize possible confusion in the jurors' minds," not to undermine Szafran's credibility. *Anderson v. Great Lakes Dredge & Dock Co.,* 509 F.2d 1119, 1131 (2d Cir.1974). Third, Szafran asserts that the District Court acted prejudicially by stating and sustaining its own objections to his counsel's questioning. While we agree that the District Court should have refrained from raising its own objections, we conclude that its occasional interjections, in response to objectionable questioning, did not prejudice Szafran's case. *See United States v. Pisani,* 773 F.2d 397, 402 (2d Cir.1985).

■ Over the course of the trial, the District Court made a number of disparaging comments to Szafran's trial counsel, some at sidebar and a few in the presence of the jury. These comments went to counsel's level of skill and preparation, not to "an ultimate issue of fact" or to the merits of Szafran's case. *Shah,* 148 F.3d at 98. Upon review of the record as a whole, we find that these isolated remarks do not evidence "a de[e]p-seated favoritism or antagonism that ... ma[d]e fair judgment impossible." *Kensington Int'l Ltd. v. Repub. of Congo,* 461 F.3d 238, 245 (2d Cir.2006) (quoting *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)); *see Pisani,* 773 F.2d at 403–04. We therefore affirm the judg-

ment as to the discrimination and retaliation claims.

■ Szafran requests that the case be reassigned to a different judge on remand of the contract claim. While we do not doubt the District Court's impartiality, we nevertheless believe that reassignment is advisable, "both for the judge's sake and the appearance of justice," given the District Court's strong belief in the illegality of the Consulting Agreement, and its finding that the parties and their counsel had acted fraudulently by failing to raise the issue. *United States v. Robin,* 553 F.2d 8, 10 (2d Cir.1977) (internal quotations omitted); *see United States v. Quattrone,* 441 F.3d 153, 192–93 (2d Cir.2006).

For the foregoing reasons, the entry of judgment on Plaintiff–Appellant's breach of contract claim is VACATED. The matter is REMANDED for further proceedings consistent with this decision and REASSIGNED to another judge. The judgment of the District Court is AFFIRMED in all other respects.