18-1672-cv
*eCommision Solutions, LLC v. CTS Holdings Inc.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of May, two thousand nineteen.

PRESENT:    JOHN M. WALKER, JR.,
            JOSÉ A. CABRANES,
            PETER W. HALL,
                    *Circuit Judges.*

---

ECOMMISSION SOLUTIONS, LLC,

        *Plaintiff-Appellant,*                    18-1672-cv

        v.

CTS HOLDINGS INC. AND CTS SYSTEMS INC.,

        *Defendants-Appellees.*[*]

---

[*] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

**FOR PLAINTIFF-APPELLANT:**                    MICHAEL D. ANDERSON (John H. Cayce, Jr. and Caleb B. Bulls, *on the* brief), Kelly Hart & Hallman LLP, Fort Worth, TX.

**FOR DEFENDANTS-APPELLEES:**                   STUART J. GLICK (Marion Bachrach and Vivian M. Arias, *on the brief*), Thompson & Knight LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Katherine B. Forrest, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the May 2, 2018 judgment of the District Court be and hereby is **AFFIRMED.**

Plaintiff-Appellant eCommission Solutions ("ECS") appeals from a judgment of the District Court granting summary judgment on all remaining claims in a lawsuit against Defendants-Appellees CTS Holdings and CTS Systems (jointly, "CTS"). On March 26, 2015, ECS filed a diversity action against CTS, seeking damages in connection with CTS's allegedly unlawful poaching of ECS's clients. Although the lawsuit below involved multiple claims and counterclaims (including, *inter alia,* breach of contract, defamation, and promissory fraud), only ECS appealed the final judgment, and it now challenges the grant of summary judgement only with respect to its unfair competition claim. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review *de novo* a district court's grant of summary judgment, resolving all ambiguities and drawing all factual inferences in favor of the non-moving party. *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 145 (2d Cir. 2007). While the party seeking summary judgment always bears the burden of demonstrating "the absence of a genuine issue of material fact," that party may do so by pointing out that the non-moving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). We are free to "affirm an appealed decision on any ground which finds support in the record, regardless of the ground upon which the trial court relied." *McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000) (internal quotation marks omitted).

ECS advances three central arguments on appeal. First, ECS argues that the District Court erred in concluding that, under New York law, a claim for unfair competition requires "wrongful *taking*—as opposed to wrongful *use*." Br. Appellant 14; *see also eCommission Sols., LLC v. CTS Holdings, Inc.*, No. 15-CV-2671 (KBF), 2018 WL 2078816, at *6 (S.D.N.Y. May 1, 2018) ("[T]here is no factual basis to believe CTS did anything fraudulent, deceptive, or abusive to gain that information, which was readily shared while CTS and ECS worked together."). Second, ECS argues that the District

2

Court overlooked evidence that CTS had in fact obtained confidential ECS information improperly. Finally, ECS argues that the record supports its claim that CTS's misappropriation caused ECS's loss of business so as to create an issue of "material fact" for trial.

ECS's first two arguments may well have merit. We have previously explained that, under New York law, unfair competition includes not only the misappropriation of physical items, but also of "a benefit or property right belonging to another." *Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001). Similarly, the New York Court of Appeals has explained that "courts have not hesitated to protect customer lists and files as trade secrets" and that the misuse of such lists may constitute unfair competition. *Leo Silfen, Inc. v. Cream*, 29 N.Y.2d 387, 392-93 (1972); *see also Milton Abeles, Inc. v. Farmers Pride, Inc.*, 603 F. Supp. 2d 500, 503 (E.D.N.Y. 2009) (denying summary judgment on an unfair competition claim where plaintiff "originally supplied defendant with the list in order to further their joint business interests" and then "converted this confidential list for an entirely different purpose . . . cutting plaintiff out of the distribution arrangement.")

We need not decide these issues, however, as we think ECS's third argument fails. Under New York law, "damages" is an essential element of unfair competition claims. *See Waste Distillation Tech., Inc. v. Blasland & Bouck Eng'rs, P.C.*, 136 A.D.2d 633, 633 (2d Dep't 1988) ("[T]he absence of sufficient allegation of special damages mandates the dismissal of the plaintiff's unfair competition and *prima facie* tort causes of action.") Moreover, such damages must be directly traceable to the acts of unfair competition. As the New York Court of Appeals has explained, "damages cannot be remote, contingent or speculative. . . . The standard is not one of mathematical certainty but only reasonable certainty." *E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441 (2018) (internal quotation marks and citations omitted).

Here, ECS has presented no admissible evidence to support its claim that CTS's use of their pricing and customer list *caused* their loss of business. In fact, the undisputed evidence all suggests that other factors—particularly concerns about ECS's new and untested system—drove customers to contract with CTS and Dell instead. For example, ECS does not dispute that customer AMEX expressed "huge concern with being the first [one] on an unproven system"; that customer Atlas wrote to ECS "to express the frustration of my team while they attempt to work with [ECS] during your transition . . . I no longer have the confidence you were ready for this change"; and that customer BTI wrote to ECS that "[w]e are in a complete state of disarray and need a restart and regroup as to what services we are contracted with." App'x 1392-96.

By contrast, ECS's sole evidence in support of its claim that CTS's improper use of the price information caused the transfer of customers consists of a single declaration submitted by a *former* AMEX Vice President Jonathan Hamblett. It is undisputed, however, that Hamblett left AMEX nearly three months before AMEX decided to shift its business from ECS to CTS. App'x 1446; Br. Appellee 37-38; Br. Appellant 18 (not disputing CTS's timeline). Moreover, while Hamblett relates first-hand knowledge regarding Dell's offer to AMEX, he merely evinces secondary knowledge

3

regarding the transition decision. App'x 1324-25 ("It is my understanding that the sole reason that Amex GBT transitioned its business from ECS to Dell Marketing and CTS was due to the lower pricing they offered.")

To be sure, disputes as to "the weight of the evidence . . . are for the fact-finder to resolve" and should not be decided at summary judgment. Questions of admissibility, however, "are properly resolved by the court," and "[a]s a general rule, the admissibility of evidence on a motion for summary judgment is subject to the same rules that govern the admissibility of evidence at trial." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) (internal quotation marks omitted). Because Hamblett's statement regarding the cause of AMEX's transition from ECS to Dell and CTS appears to be based on hearsay rather than first-hand knowledge, we need not consider it. As a result, the *only* evidence in the record explaining why customers transferred from ECS to CTS is evidence of ECS's own failures in providing service. ECS has therefore failed to produce evidence regarding a crucial element of their case, and summary judgment is appropriate. *Celotex,* 477 U.S. at 323.

## CONCLUSION

We have reviewed the remaining arguments raised by ECS on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the May 2, 2018 judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court