■ LESLIE YUDELL, Respondent-Appellant, v ANN ISRAEL & ASSOCIATES, INC., Appellant-Respondent. [669 NYS2d 580] —Order, Supreme Court, New York County (Barbara Kapnick, J.), entered October 24, 1997, denying defendant's motion and plaintiff's cross-motion for summary judgment, unanimously affirmed, without costs.

Defendant is a legal-recruiting service that has been in business since 1992. Plaintiff was employed by defendant as a legal recruiter pursuant to a letter agreement drafted by defendant, effective September 20, 1993. According to the terms of this agreement, plaintiff would earn commissions based on a percentage "of all fees actually received by us in cash from placements which are clearly identified as originated by you." It also provided that either party could terminate the agreement at any time upon two-weeks written notice. Plaintiff resigned on or about September 29, 1994.

Plaintiff brought this action to recover commissions for her claimed role in securing in-house counsel jobs for Vicki Fleiss at AT&T and for John Sander at Schering-Plough. Though plaintiff worked on obtaining both these placements, they were not completed until November 1994, after she had left defendant's employment. Defendant's main contention is that, as a matter of law, plaintiff cannot recover commissions for placements that were finalized after she left. Alternatively, if the court rejects this argument, defendant maintains that there are issues of fact as to whether plaintiff "originated" the placements as that term was understood by the contracting parties.

The motion court correctly denied defendant's summary judgment motion. First of all, under the doctrine of contra proferentem, the employment agreement should be construed against the drafter, namely defendant herein (Graff v Billet, 64 NY2d 899, 902). The words "placements * * * originated by you" do not, by themselves, specify when or how the placement must be completed for plaintiff to become entitled to a commission. Had defendant meant to foreclose the possibility that plaintiff might earn a post-termination commission on a placement unquestionably originated by her, defendant could have said so

explicitly. By way of example, the contract could have read "placements * * * originated *and completed* by you" or "placements * * * originated by you *which occur during your employment here*." Since the agreement is silent on this point, such silence should be construed in favor of the party who played no role in drafting the agreement.

We distinguish the cases cited by defendant in support of its claim that, in the absence of a contract provision to the contrary, an at-will employee cannot be entitled to commissions on post-termination placements. For instance, in *McEntee v Van Cleef & Arpels* (166 AD2d 359, 360), we held that a jewelry salesman was not entitled to sales commissions he allegedly would have earned if he had not been terminated, because he "failed to allege the existence of any contract entitling him to such unearned commissions nor the precise terms thereof." We properly rejected that plaintiff's open-ended claim to commissions on unspecified future placements, where there was no contract setting forth either how such commissions would be calculated or what the limits of defendant's purported obligation would be.

Defendant quotes *Mackie v La Salle Indus.* (92 AD2d 821, 822, *appeal dismissed* 60 NY2d 612) for the proposition that "a sales representative, hired at will, is not entitled to commissions after the termination of employment." However, once again the facts are significantly different. In *Mackie*, plaintiff had an oral at-will employment agreement as a sales representative. She received a percentage of the net sales from accounts obtained by or assigned to her. She obtained a lucrative account, but was then taken off it for unsatisfactory performance, and was terminated a year later. This Court denied her claim to future commissions from that account, among others.

Other cases in which an at-will salesman has been denied commissions from post-termination sales similarly involve a plaintiff's indefinite and unlimited claim to commissions from all future transactions between its former employer and certain customers, simply because plaintiff was the one who initially secured these customers (*Worley v Calculagraph Co.*, 87 Misc 309, 310; *Scott v Engineering News Publ. Co.*, 47 App Div 558, 559). Here, by contrast, plaintiff seeks commissions from two specific placements allegedly originated by her. She can also point to a contract provision that establishes this calculation method and that supports the inference that her termination was not meant to extinguish her rights with respect to those placements. She does not claim the right to prospective commissions for the indefinite future simply because she allegedly

originated defendant's relationship with those clients. While her case is not as strong as the plaintiff's case in *Ability Search v Lawson* (556 F Supp 9, *affd* 697 F2d 287 [contract expressly provided for commissions from placements originated by plaintiff but completed after she left]), its limited and definite character sets it apart from the cases cited by defendant.

The issue then becomes whether plaintiff "originated" the placements of Fleiss and Sander. If so, she would be entitled to the commissions she seeks. Because material issues of fact exist as to the parties' understanding of the term "originated" and the extent of plaintiff's work on these placements, the motion court was also correct in denying plaintiff's cross-motion for summary judgment.

Plaintiff's claim that she should be credited for these placements is supported by defendant's files on Fleiss and Sander, both of which list her as the recruiter handling the matter. However, the parties dispute the extent of plaintiff's work on these placements.

For example, with respect to the Sander placement, plaintiff alleges that she brought Schering-Plough to defendant's attention as a potential client, while defendant asserts that it already had a relationship with Schering-Plough because the latter had been a client of defendant's predecessor in interest (an earlier recruiting firm also run by Ann Israel). Plaintiff also alleges that she was the first to speak to Fleiss about the AT&T position, but defendant claims that Fleiss's initial relationship with defendant's firm was through another recruiter, and that plaintiff only took over the matter because this recruiter had ceased to handle placement of litigation associates. The parties also disagree over the scope and significance of the follow-up work that Ann Israel herself undertook to complete the Fleiss and Sander placements after plaintiff left.

These are just the most prominent of the many disputed facts in this case. In short, "sufficient issues of fact exist as to whether plaintiff was the procuring cause of the [placement] * * * so as to require a trial" (*Brown, Harris, Stevens v Rosenberg*, 156 AD2d 249, 250 [citation omitted]). Concur—Milonas, J. P., Rosenberger, Ellerin and Tom, JJ.