THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
December 15, 2008

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re BetaBatt, Inc.
_____

Serial No. 77036122
_____

Raymond F. Ferrera of Arnold & Ferrera, L.L.P. for
BetaBatt, Inc.

Michael S. Levy, Trademark Examining Attorney, Law Office
110 (Chris A.F. Pedersen, Managing Attorney).
_____

Before Grendel, Cataldo and Bergsman, Administrative
Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

BetaBatt, Inc. ("applicant") filed an intent-to-use

application to register the mark DEC, in standard character

format, for the goods and services identified below:

> Power generating and/or storage
> devices, namely, batteries deriving
> power from nuclear decay processes, in
> Class 9; and,
>
> Treatment of radioactive materials
> and/or porous substrates for use in the
> fabrication of power generating and/or
> storage devices, namely batteries
> deriving power from nuclear decay
> processes; consulting and technical
> advisory services relating to the

> treatment of radioactive materials
> and/or porous substrates, and to the
> fabrication of power generating and/or
> storage devices, namely batteries
> deriving power from nuclear decay
> processes, in Class 40.

The Trademark Examining Attorney refused to register applicant's mark under Section 2(e)(1) of the Trademark Act of 1946, 15 U.S.C. §1052(e)(1), on the ground that applicant's mark is merely descriptive. According to the Examining Attorney, DEC is an acronym for the term "direct energy conversion," "direct energy conversion" refers to batteries and energy generation via radioactive isotopes, and therefore DEC directly describes a particular type of energy generation utilizing the nuclear decay of radioactive materials in applicant's batteries, as well as describing the subject of applicant's services.

To support the descriptiveness refusal, the Examining Attorney submitted the following evidence:[1]

---

[1] We do not give any probative weight to the fact that the Examining Attorney's search in the GOOGLE search engine for the term "Direct Energy Conversion" retrieved 22,200 hits. It is common knowledge that most search engine searches retrieve a large number of hits and that many of the hits retrieved are duplicates. Moreover, the "hit list" submitted by the Examining Attorney to corroborate the number of hits is not probative that there are 22,200 relevant references. Although some of the entries are relevant because the text is sufficient to show the context in which the term at issue is used, many entries may be so abbreviated that the context regarding the use of term is unclear. *In re Thomas,* 79 USPQ2d 1021, 1026 (TTAB 2006); *In re Fitch IBCA, Inc.,* 64 USPQ2d 1058, 1060 (TTAB 2002). Thus, we cannot conclude that all of the references are relevant.

1.  An entry from the AF Acronym Finder website (www.acronymfinder.com) identifying DEC as "Direct Energy Conversion."

2.  An article entitled "Nuclear Batteries for Wireless Sensors" dated March 2006 in the *AutomationWorld* website (www.automationworld.com) identifying "direct energy conversion" as DEC and as a power source.

3.  An article entitled "Energy Conversion and Storage" dated June 1995 in the Institution of Energy and Technology website (www.iee.org) regarding the conversion of raw materials into energy.  The article identifies "Direct Energy Conversion" as an energy conversion term.  However, it did not reference DEC as an acronym for "direct energy conversion."

4.  The "Energy Conversion" listing from the *Encyclopedia Britannica* website (http://secure.britannica.com) referencing "direct energy-conversion" as an efficient way of transforming energy into electricity.  However, in the excerpt submitted by the Examining Attorney there was no reference to DEC as an acronym for "direct energy conversion."

5.  An excerpt from the website for The 5th International Conference on Fluid and Thermal Energy Conversion (2006) (www.uic.edu).  The sponsors of the conference were soliciting papers on thermal energy conversion systems including "direct energy conversion (DEC)."

6.  An article in *Pure Energy Systems* publicly accessible online database in field of energy (*i.e.,* a wiki) (www.peswiki.com) discussing a project by Potomac Energy Products, LLC to create energy through "Direct Energy Conversion (DEC)." The author subsequently used DEC in lieu of the term "direct energy conversion."

7.  An abstract summarizing a paper entitled "High Efficiency Magnetic-Nuclear Propulsion/Power System" (http://www3.inspi.ufl.edu) including a reference to a "highly efficient power system for

terrestrial applications from the DOE-NERI Direct Energy Conversion (DEC) Power Production Program."

8. An excerpt from an unidentified source that appears to be a course listing for an online seminar (http://web.nitc.ac.in/~ee/departmental). One of the modules is entitled "Direct Energy Conversion (DEC)" and it references DEC devices.

9. An article, dated July 18, 2005, entitled "2020 Vision – Next generation batteries" published in the online version of *The Peak: Simon Fraser University's Independent Student Newspaper* (www.peak.sfu.ca). In its discussion regarding batteries, the article provides the following:

> The Direct Energy Conversion (DEC) cell is a beta-voltaics-based "nuclear" battery that can run for over a decade on the electrons generated by the natural decay of the radioactive isotope tritium. Because tritium's half-life is 12.3 years, the DEC cell could provide a decade's worth of power for many applications.[2]

On the other hand, applicant contends that DEC is not merely descriptive because DEC is not a recognizable acronym. Applicant does not dispute that DEC stands for "Direct Energy Conversion." However, applicant asserts that the Examining Attorney failed to prove that "the common everyday purchaser of a battery that is used in connection with hearing aids or similar medical devices

---

[2] This excerpt was referenced in another website found at www.core77.com. It appears to be a blog. A similar quote was excerpted in the *Advanced Information Networks* website (www.advancedinformation.net), a website that appears to be compilation of articles regarding new technology.

will know that DEC stands for direct energy conversion."
Moreover, there is no evidence that any other company uses
DEC as a trademark.[3]

Applicant also argues that "DEC is not merely
descriptive because it is not possible to associate the
mark with Applicant's services without a multistage
reasoning process and additional information."[4]

> In this case, a consumer will not
> readily know what DEC stands for, and
> even if a consumer did know, the
> consumer would still have to conduct
> some multi-stage reasoning to determine
> the operation of Applicant's products.
> The term, DEC does not describe in any
> clear or precise way (or an indirect
> way), the goods or services offered
> under this trademark, and the Internet
> excerpts cited by the Office do not
> support this finding either.[5]

A term is merely descriptive if it immediately conveys
knowledge of a significant quality, characteristic,
function, feature or purpose of the products and services
it identifies. *In re Gyulay,* 820 F.2d 1216, 3 USPQ2d 1009,
1009 (Fed. Cir. 1987). Whether a particular term is merely
descriptive is determined in relation to the goods and
services for which registration is sought and the context
in which the term is used, not in the abstract or on the

---

[3] Applicant's Brief, pp. 5-6.
[4] Applicant's Brief, p. 8.
[5] Applicant's Brief, p. 9.

5

basis of guesswork.  *In re Abcor Development Corp.,* 588 F.2d 811, 200 USPQ 215, 218 (CCPA 1978); *In re Remacle,* 66 USPQ2d 1222, 1224 (TTAB 2002).  In other words, the question is not whether someone presented only with the mark could guess what the products and services are. Rather, the question is whether someone who knows the products and services will understand the mark to convey information about them.  *In re Tower Tech, Inc.,* 64 USPQ2d 1314, 1316-1317 (TTAB 2002); *In re Patent & Trademark Services Inc.,* 49 USPQ2d 1537, 1539 (TTAB 1998); *In re Home Builders Association of Greenville,* 18 USPQ2d 1313, 1317 (TTAB 1990); *In re American Greetings Corp.,* 226 USPQ 365, 366 (TTAB 1985).

"On the other hand, if one must exercise mature thought or follow a multi-stage reasoning process in order to determine what product or service characteristics the term indicates, the term is suggestive rather than merely descriptive."  *In re Tennis in the Round, Inc.,* 199 USPQ 496, 497 (TTAB 1978).  *See also, In re Shutts,* 217 USPQ 363, 364-365 (TTAB 1983); *In re Universal Water Systems, Inc.,* 209 USPQ 165, 166 (TTAB 1980).

A word, term, or letters that are a recognized abbreviation for the goods and services in the application is merely descriptive.  *Foremost Dairies, Inc. v. The*

*Borden Company,* 156 USPQ 153, 154 (TTAB 1967); *Calgon Corporation v. Hooker Chemical Corporation,* 151 USPQ 359, 360 (TTAB 1966). However, not all abbreviations are necessarily merely descriptive.

> While each case must be decided on the basis of the particular facts involved, it would seem that, as a general rule, initials cannot be considered descriptive unless they have become so generally understood as representing descriptive words as to be accepted as substantially synonymous therewith.

*Modern Optics, Inc. v. Univis Lens Co.,* 234 F.2d 504, 110 USPQ 293, 295 (CCPA 1956). *See also Southwire Co. v. Kaiser Aluminum & Chemical Corp.,* 196 USPQ 566, 573 (TTAB 1977).

Accordingly, for DEC to be merely descriptive of applicant's batteries deriving power from nuclear decay processes and services relating to batteries deriving power from nuclear decay processes, we have to find the following:

1. DEC is an abbreviation for "direct energy conversion";

2. "Direct energy conversion" is merely descriptive of the products and services listed in the application; and,

3. A relevant consumer viewing DEC in connection with applicant's products and services would recognize it as an abbreviation of the term "direct energy conversion."

*In re Harco Corp.,* 220 USPQ 1075, 1076 (TTAB 1984).

A.   <u>DEC is an abbreviation for "direct energy conversion."</u>

The entry in the AF Acronym Finder identifying DEC as "direct energy conversion," the references in the articles and websites to "direct energy conversion (DEC)," and applicant's concession, demonstrate that DEC is an abbreviation for "direct energy conversion."

B.   <u>"Direct energy conversion" is descriptive of the products and services listed applicant's application.</u>

As demonstrated by the evidence of record, the term "direct energy conversion" describes a power source and an efficient way of transforming energy into electricity. Indeed, the author of the "2020 Vision – Next generation batteries" article in *The Peak:  Simon Fraser University's Independent Student Newspaper* stated that "[t]he Direct Energy Conversion (DEC) cell is a beta-voltaics-based 'nuclear' battery that can run for over a decade on the electrons generated by the natural decay of the radioactive isotope tritium."

Applicant's products are batteries deriving power from nuclear decay processes and its services are related to batteries deriving power from nuclear decay processes. Accordingly, the term "direct energy conversion" directly

describes a feature or characteristic of applicant's products and services (*i.e.,* applicant's products generate power from the decay of radioactive sources and its services are rendered in connection with batteries generating power from the decay of radioactive sources).

C.   Relevant consumers will recognize DEC as an abbreviation for "direct energy conversion."

The Examining Attorney has made of record sufficient exhibits, including, but not limited to, the entry from the acronym finder, showing the use of DEC to reference the term "direct energy conversion." In most of the exhibits, DEC appears immediately after the term "direct energy conversion" (*e.g.,* Direct Energy Conversion (DEC)). Based on this evidence, we find that DEC is routinely used as an abbreviation for the term "direct energy conversion." Accordingly, it was incumbent upon applicant to submit evidence showing that the letters DEC will not be readily recognized as an abbreviation for "direct energy conversion." However, applicant did not submit any evidence. The arguments and opinion of counsel are insufficient to overcome the facts established by the Examining Attorney. *See Spin Physics, Inc. v. Matsushita Electric Co.,* 168 USPQ 605, 607 (TTAB 1970).

D.   Applicant's other arguments.

   1.   Applicant's products are batteries for hearing aids and other medical devices.

Applicant argues that there is no evidence that the "common everyday purchaser of a battery that is used in connection with hearing aids or similar medical devices will know that DEC stands for direct energy conversion."[6] However, applicant's description of goods is not limited to batteries used in connection with hearing aids or similar medical devices, and we may not insert such a limitation in the description of goods.  *In re Associated Theatre Clubs Co.*, 9 USPQ2d 1660, 1662 (TTAB 1998) (since applicant's identification of services does not restrict their location to sites away from the actual place of performance, it is presumed that such services may be offered at the site of performance or away from it).  It is well settled that the Board may not read unstated restrictions into the goods and services.  In the absence of a restriction in the description of goods and services as to the type of goods or services, channels of trade, or classes of purchasers, the presumptions afforded to a registration under Section 7(b) of the Trademark Act of 1946 include a presumption of use on all the goods and services encompassed by the

---

[6] Applicant's Brief, p. 6.

description of goods in all of the normal markets or channels of trade for such goods and services to all potential purchasers therefor. *Cf Autac Inc. v. Viking Industries, Inc.,* 199 USPQ 367, 374 (TTAB 1978), and cases cited therein.

Because the description of goods is unrestricted, the products identified in the application include all consumers of batteries deriving power from nuclear decay processes, not just consumers of hearing aids and other medical devices.  For example:

  a.   The *AutomationWorld* website article references
       batteries that use direct energy conversion to
       power industrial wireless sensors;

  b.   The *Encyclopedia Britannica* website article
       references direct energy conversion devices for
       use in spacecraft; and,

  c.   The excerpt from the *Pure Energy Systems* website
       references "this new DEC method has the potential
       to produce megawatts of clean electricity for
       powering cars, trucks, and everything in our
       homes within the next 10 years."

Finally, applicant's belated attempt to restrict the description of goods to batteries for hearing aids and other medical devices does not address the services related to batteries deriving power from nuclear decay processes. Presumably, applicant would also limit the services to generating power for hearing aids and other medical devices.  However, as indicated above, we may not insert

such a limitation into the description of services.  Thus, the description of services extends beyond consumers of hearing aids and other medical devices.

    2.   <u>No one else uses DEC as a trademark</u>.

Applicant argues that "there is no evidence that other manufacturers of batteries utilize the designation DEC as the brand name of their batteries or consulting relating thereto."[7]  In this regard, however, it is well settled that the fact that an applicant may be the first and only user of a merely descriptive term does not justify registration if the only significance conveyed by the term is merely descriptive. *See In re Sun Microsystems, Inc.,* 59 USPQ2d 1084, 1087 (TTAB 2001); *In re Acuson,* 225 USPQ 790, 792 (TTAB 1985).

    3.   <u>A multi-stage reasoning process is required to associate the mark with the characteristics of the products and services</u>.

Applicant contends that even if consumers recognized DEC as an abbreviation for "direct energy conversion," they would still have to conduct multi-stage reasoning to determine the characteristics and features of applicant's products and services.[8]  As indicated above, we have found that DEC directly informs consumers that applicant's

---

[7] Applicant's Brief, p. 6.
[8] Applicant's Brief, p. 9.

products generate power from the decay of radioactive sources and its services are rendered in connection with generating power from the decay of radioactive sources. Thus, the problem with applicant's argument is two-fold: (1) applicant does not describe the multi-stage reasoning process; and, (2) applicant did not submit any evidence to support its argument. Merely claiming that a multi-stage reasoning process is necessary does not make it so. At a minimum, applicant should have set forth the multi-stage reasoning process for our consideration.

In view of the foregoing, we find that the term DEC, used in connection with batteries deriving power from nuclear decay processes and services related thereto, is merely descriptive.

Decision: The refusal to register is affirmed.